The Terre Haute and Indianapolis Railroad Company v. Mason.

## THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY v. MASON.

[No. 17,922.   Filed Feb. 24, 1897.   Rehearing denied Oct. 27, 1897.]

MALICIOUS PROSECUTION.—*Probable Cause.*—*Burden of Proof.*—In an action for malicious prosecution the burden is on plaintiff to show that at the time the prosecution complained of was instituted there was no probable cause for prosecution, and that the same was malicious.  *p. 581.*

SAME.—*Necessary Proof.*—The inquiry in an action for malicious prosecution must be, not whether the plaintiff was or was not guilty of the offense for which he was prosecuted, but whether, at the time when the prosecution began there was or was not probable cause for bringing it, and whether defendant acted with or without malice.  *p. 582.*

SAME.—*Defense.*—*Probable Cause.*—Where in an action for damages for malicious prosecution the one charged with having instituted such prosecution can show that his conduct at the time was such as a reasonable and prudent man would be likely to exhibit under like circumstances, it will be sufficient to defeat a recovery.  *pp. 582–584.*

SAME.—*Grand Jury Indictment.*—*Burden of Proof.*—Where in an action for malicious prosecution the prosecution was not instituted on the affidavit of the prosecuting witness, but all of the information was placed in the hands of the prosecuting attorney and by him laid before the grand jury, the burden is upon plaintiff to show that the defendant was the prosecutor, and that the prosecution was without reasonable or probable cause.  *pp. 586, 587.*

SAME.—*Grand Jury Indictment.*—*Probable Cause.*—A grand jury indictment is not conclusive evidence, but may be considered along with other facts found by the jury in the trial of a case of malicious prosecution, for the purpose of showing whether or not there was probable cause shown.  *p. 587.*

SAME.—*Defense.*—*When Prosecution Instituted by Advice of Attorney.*—Where in an action for malicious prosecution it is shown that defendant, before instituting such prosecution, consulted an attorney, placed all the facts before him fully and fairly, and acted upon his advice, such proof makes out a case of probable cause.  *p. 588.*

SAME.—*Advice of Counsel.*—The fact that the general manager of a railroad company who supervised and directed a prosecution for

The Terre Haute and Indianapolis Railroad Company v. Mason.

such company was himself a lawyer would in no way affect the defense of such company in an action for malicious prosecution that 'it, through such general manager, sought the advice of an attorney in reference to such prosecution, and acted thereon. *pp. 588, 589.*

SAME.—*Special Findings.*—A finding by the jury in a trial for malicious prosecution that such prosecution was maliciously brought by the railroad company is inconsistent with the finding that the action of the officer of the company who directed all of the proceedings on the part of the company was without "any hatred, ill will or malice toward the plaintiff." *p. 590.*

From the Clinton Circuit Court.　*Reversed.*

*Bayless, Guenther & Clark* and *T. J. Golden,* for appellant.

*John C. Farber, Claybaugh & Claybaugh* and *Gavin, Coffin & Davis,* for appellee.

HOWARD, J.—This was an action by appellee against appellant, to recover damages for alleged malicious prosecution. The jury returned a special verdict by way of answers to eighty-one interrogatories submitted to them, and the court rendered judgment thereon in favor of the appellee. The errors assigned on the appeal are, (1) the overruling of the demurrer to the complaint; (2) the overruling of the motion made by appellant for judgment upon the verdict; (3) the overruling of the motion for a new trial, and (4) the overruling of the motion in arrest of judgment.

As to the first alleged error, it is perhaps enough to say that we find the complaint sufficient.

The appellee had been for about eleven years in the employment of the appellant company. During the last four or five years of which time he had been brakeman on one of appellant's passenger trains.

In February or March, 1894, it became known to the officers of the appellant company that certain tickets, known as "last end mileage books" were being

wrongfully sold to a ticket broker in the city of St. Louis. After an investigation, the officials of the company became satisfied that the tickets so wrongfully disposed of had been taken up on trains running from Indianapolis to St. Louis, on which trains a Mr. John R. Wise was conductor, and the appellee was brakeman. It was the custom for this conductor, after collecting the tickets and "last end mileage books" from passengers, to turn the same over to his brakeman, the appellee, who enclosed the same in paper envelopes, sealing the envelopes and marking on the outside the number and kind of tickets in each. The whole were then placed by the brakeman in a large paper bag, and addressed to the proper accounting officers of the road. For some unexplained cause, the conductor was not in the habit of canceling the "last end mileage books" taken up by him and turned over with other tickets to the brakeman. It was these uncanceled last end mileage books that were found absent from the paper bags when the same were opened by the accounting officers; and these were also the tickets that were found in the hands of the ticket broker at St. Louis.

The officers of the appellant company do not seem to have suspected Conductor Wise; but, from information professed to have been obtained through detectives, their suspicion appears to have rested wholly upon appellee, the brakeman. The conductor had been in the service of the company and in charge of passenger trains for nearly twenty-seven years, and the utmost confidence was reposed in him. He was accordingly taken into the counsels of the officials of the company in pursuing their investigations in this matter, and was instructed to continue as heretofore to turn over tickets to the brakeman, the conductor, however, to keep an account of such tickets. The con-

ductor's report, so kept, being compared with the tickets returned·by the brakeman, it was discovered that last end mileage books so reported were not found in the sealed bags returned by the brakeman. After consulting with attorneys, and continuing the investigation for several weeks, the case was laid before the assistant prosecuting attorney of the city of St. Louis, who, in turn, laid it before the grand jury of said city.

On July 27, 1894, the grand jury returned an indictment against the appellee for fraudulently selling railroad tickets, and he was arrested on the same day and committed to jail, where he remained until July 30, 1894, when he gave bond for his appearance before the St. Louis criminal court, from day to day during the July term, 1894, and on the first day of each term thereafter to which said cause might be continued. On May 17, 1895, the appellee was tried by a jury of said court, and was duly acquitted and discharged.

On August 8, 1895, the appellee, having been refused reinstatement in his employment, or any compensation for loss sustained, brought this action to recover damages resulting to him by reason of the alleged malicious prosecution instituted by appellant.

For appellee to recover, it was necessary, besides his acquittal, for him to show that, at the time the prosecution was instituted against him, the appellant did not have probable cause for bringing such suit, and that the same was malicious. This is one of the cases in which a plaintiff must prove a negative. The action will not lie unless there was a want of probable cause, and such want of probable cause must therefore be shown by the plaintiff. The burden is not upon the defendant to show that there was such probable cause and that he acted without malice. If, however, the defendant does show the existence of such

probable cause, or that there was no malice in bringing the suit, then, of course, even though it should turn out that the plaintiff had been acquitted of the charge, there could still be no recovery by him, unless for costs. Cooley, Law of Torts, 180.

It is true that before the action for damages can be successful, it must be shown that the plaintiff has been acquitted of the crime charged, or the action otherwise terminated in his favor. Such acquittal, together with the presence of malice and the absence of probable cause, is a necessary circumstance to justify the bringing of the action for damages. Cooley, Torts, 181. But the acquittal of the plaintiff has no further relation to the action for damages. The inquiry must, therefore, be, not whether the plaintiff was or was not guilty of the offense for which he was prosecuted, but whether, at the time when the prosecution began, there was or was not probable cause for bringing it, and whether the defendant acted with or without malice.

A mere belief, however, that probable cause exists, as said by Mr. Cooley, is not sufficient. "One may believe on suspicion and suspect without cause, or his belief may proceed from some mental peculiarity of his own; there must be such grounds of belief as would influence the mind of a reasonable person, and nothing short of this could justify a serious and formal charge against another. Still, some allowance must be made for the excitement under which prosecutions for supposed offenses against the complainant himself are almost necessarily instituted. The complainant cannot be required to act with the same impartiality and absence of prejudice in drawing his conclusions as to the guilt of the accused that a person entirely disinterested would deliberately do, any more

The Terre Haute and Indianapolis Railroad Company *v.* Mason.

than a person assaulted could be expected to judge of his danger with the like coolness and impartiality. And all that can be required of him is, that he shall act as a reasonable and prudent man would be likely to act under like circumstances." Cooley, Torts, 182.

We may think now, in the light of all the facts as since brought out and shown in the record, that an injustice was done to an honest man. We may even be of opinion that the appellant company did not fairly treat the brakeman after he had been acquitted of the charge against him. The appellant, even if unwittingly, had yet brought upon the appellee unmerited trouble, expense, and mortification. Confined in jail at first, and then placed under bond for nearly a year, as soon as he was acquitted, he went, as an honest man might do after his vindication, and asked to be returned to the favor of the company, and to the employment in which he had so long and so well served; but his advances were repulsed, and he was compelled to seek his livelihood elsewhere. This treatment may seem unjust. But that is a question of morals, and not of law. We are simply to consider whether, at the time the proceedings were instituted against him, there was probable cause for the action taken by the officers of the company. He was, indeed, duly acquitted of all charges. But, as already said, the question is not as to whether he was innocent or guilty. Neither is it a question as to whether the officers of the company acted fairly towards him after his acquittal. We have to go back of all this, and consider what the verdict shows as to whether, at the time of bringing the charges, the officials had probable cause for so doing, and acted without malice.

One who is charged with an assault and battery, or like offense, may show that, at the time of committing the act charged, he had good reason to believe, and did

believe, that he was in danger of death or great bodily harm; and the fact that he was, at the time, not in any such danger will not make his defense bad, provided only, the circumstances were such as to show that he had then good reason to believe that he was in actual peril, which peril could be avoided only by the action taken by him. So, in a case of malicious prosecution, which is *quasi* criminal in its character, if the one charged with having instituted such prosecution can show that his conduct at the time was such as a reasonable and prudent man would be likely to exhibit in like circumstances, it will be sufficient to defeat a recovery for damages.

The facts found by the jury, and bearing upon the issues before the court were the following, given in a connected and narative form:

The indictment of the appellee, and his arrest, imprisonment, the giving of bond, trial, and acquittal, are first stated in the verdict. It is found that, prior to his indictment, the appellee was a man of good reputation for honesty and integrity; that he had been employed as passenger brakeman by the appellant for four or five years, on trains running from Indianapolis to St. Louis, John R. Wise being conductor on such trains; that appellee, while so employed, and prior to this prosecution, was held in high esteem by the officers of the appellant company. The jury also find that John G. Williams, vice president and general manager of the company, after hearing of the wrongful disposal of certain railroad tickets, began an investigation into the matter, from which he received information that the tickets so disposed of had been used by passengers riding on trains on which appellee was brakeman and Wise was conductor; that Wise had been in the service of the railroad for twenty-five years, and the officers of the company had the utmost

confidence in his honesty and integrity; that appellee, according to the custom observed on his trains, received from the conductor all the tickets and mileage books collected on the train, and placed them in envelopes furnished by the appellant, endorsing also on such envelopes the tickets and mileage books so enclosed, and then delivered the same to the baggage master of his train, which envelopes were given at the end of each trip to the auditor of the company; that after the investigation began, John G. Williams caused the conductor to make reports of all "last end mileage books" taken up by him and turned over to appellee; that by comparing such reports of the conductor with those made by the appellee it was discovered that certain last end mileage books reported by the conductor were not found in the envelopes returned by the appellee, nor in the reports endorsed thereon by him. It is further found that John G. Williams, in instituting the prosecution against the appellee, relied and acted upon facts and circumstances which had come to his knowledge and the knowledge of other officers of the railroad company; that such officers, in the proceedings taken, acted in the discharge of their duties to the company; that prior to such prosecution John G. Williams never entertained any hatred, ill will, or malice toward appellee; that in the latter part of March, 1894, Williams consulted with his attorney, E. W. Pattison, a reputable lawyer of eminence and good standing in the city of St. Louis, and placed all the facts within his knowledge before the said Pattison; that Pattison did not advise that such facts would justify a prosecution of appellee, under the laws of Missouri; that, after such consultation, Williams continued his investigations for the purpose of finding who it was that was engaged in wrongfully disposing of said last end mileage tickets; that he caused conductor

Wise to make reports of all such tickets taken up and turned over to appellee during April and the first twenty-four days of May, 1894; that before the commencement of proceedings for the prosecution of appellee all the facts connected with the wrongful disposal of said last end mileage books, within the knowledge of the officers of the railroad company, were submitted in good faith to Jesse A. McDonald, the assistant prosecuting attorney of the city of St. Louis, whereupon the said prosecuting attorney advised that such facts would warrant and justify the prosecution of appellee, under the laws of the state of Missouri; and that said prosecuting attorney, in presenting the case to the grand jury, acted exclusively upon the facts and circumstances detailed to him by the officers, employes, and attorneys of the appellant.

This is not the case of a private person arresting or aiding in the arrest of another without warrant, on a criminal charge. The action in such a case would be for false imprisonment; and to justify such private person in making or aiding in such arrest, as said by Andrews, J., in *Farnam* v. *Feeley*, 56 N. Y. 451, it must appear that a felony had in fact been committed, and the burden is upon him to show "that he acted circumspectly and upon grounds which would have justified a careful and prudent person in believing that the person arrested was guilty of the crime."

Neither is it even a case as in *Flora* v. *Russell*, 138 Ind. 153, 33 Am. Law Reg. and Rev. 591, to which we are cited, where a prosecution was instituted on the mere affidavit of the prosecuting witness himself. In the case at bar, the whole matter, together with all information in possession of the officers of the company, was placed in the hands of the prosecuting attorney, and was by him laid before the grand jury. No arrest was made but upon indictment by that body.

In such a case the action is for malicious prosecution, and the burden "is upon the plaintiff to show that the defendant was the prosecutor, and that the prosecution was without reasonable or probable cause." *Farnam* v. *Feeley, supra*.

The burden, therefore, being upon the appellee, in the case at bar, to show malice and want of probable cause on the part of the appellant in instituting the prosecution against him, it must be apparent, from the findings above set out, that he failed to sustain his action. Moreover, while the appellant was not required to show probable cause and freedom from malice, the burden of showing the contrary being upon the appellee, yet the verdict does in fact show that the appellant proceeded without malice, and with reasonable grounds for the action taken, in laying the case before the prosecuting attorney.

It is true that an indictment, unlike a conviction, is not conclusive, but only presumptive evidence of probable cause, Townshend, Slander and Libel (4th ed.), section 426; *Scotten* v. *Longfellow*, 40 Ind. 23; yet, taking this in connection with other facts found by the jury,—the freedom from malice of the general manager who conducted the investigation; the fact that the officers of appellant, in all that they did, acted in discharge of the duties of their employment, relying in good faith upon the facts and circumstances that came to their knowledge; the fact that tickets taken up on the train of appellee were wrongfully disposed of, and that it seemed reasonable, from the report of the conductor and from other circumstances detailed in the verdict, that appellee should have been the wrongdoer,—we cannot see that probable cause was not shown; even though it afterwards appeared on the trial that the appellee was not guilty. "It would be a terrible thing," said Lord Mansfield, as cited in *Burns*

v. *Erben*, 40 N. Y. 463, "if, under probable cause, an arrest could not be made  *  *; many an innocent man has and may be taken up upon suspicion; but the mischief and inconvenience to the public in this point of view, is comparatively nothing; it is of great consequence to the police of the country."

The fact, too, that, on consultation with attorney Pattison, in March, the company was advised that the facts known at that time would not justify prosecution; and that the investigation was then continued through April and May, and the case again presented for legal advice, and this time to the prosecutor of the State, who advised that the facts showed good cause for laying the case before the grand jury, is additional reason to show that appellant's officials proceeded prudently and without undue haste to try, in good faith, to discover the truth. Not until July thereafter was the matter finally laid before the grand jury by the prosecutor, and a true bill found. It is an act of prudence, as said in Cooley's Law of Torts, 184, to take the advice of counsel in such cases, "not only because it is the advice of one who can view the facts calmly and dispassionately, but because he is capable of judging of the facts in their legal bearings." And "when he does so," as the author continues, "and places all the facts before his counsel, and acts upon his opinion, proof of the fact makes out a case of probable cause, provided the disclosure appears to have been full and fair, and not to have withheld any of the material facts." The finding here was that, "Before the prosecution, all the facts within the knowledge of the officers of the railroad company" were submitted to the prosecuting attorney, and that he then advised the prosecution.

It seems to be contended, or at least suggested, that advice of counsel is for laymen, and that John G. Wil-

liams, general manager, who supervised and directed the prosecution, being himself a lawyer of well known ability, was not entitled to be protected in his action by the advice of counsel. The rule of law, however, is applicable to all persons in the like circumstances; and one who, for himself, or as agent for another, is personally concerned in the bringing or defending of an action, is always in need of "the advice of one who can view the facts calmly and dispassionately," no matter whether he be himself an attorney at law or not. A lawyer who takes himself for a client has not usually been regarded as acting wisely.

But it may be said that there were numerous other answers by the jury to interrogatories, and some of them in conflict, or at least in seeming conflict, with those above set out. The appellee, however, had the burden of proving his own case; and if any of the facts returned by the jury should be found in conflict with those here set out, there would, at most, be a contradiction, one finding neutralizing another; and, to that extent, the appellee would have failed in making out his case. This is not a case where there is a general verdict for the plaintiff, and where, consequently, any competent evidence would be sufficient to sustain the verdict. Here, in order that the plaintiff should recover, the special verdict must show, without intendment, a case made out for the plaintiff and whatever he was bound to establish, and which is not found in his favor must be held to have been found against him. But, in several instances, we think, the conflict is but seeming. For example, the jury find that the case, as presented to Attorney Pattison, was by him presented to Judge Jones, "a reputable lawyer of eminence and good standing," and that Mr. Jones did not advise prosecution. There is nothing in the finding or in the verdict to show that the facts so pre-

sented were not the same as presented to Mr. Pattison himself, "in the latter part of March, 1894." The investigation, however, as we have seen, was pursued through April and May; and when the case was finally presented to the prosecuting attorney, his advice was that the facts were sufficient. Besides, in a criminal prosecution, we are not able to see why a prudent man might not rightfully prefer to take the advice of the prosecuting attorney, whose special business it is to investigate and try such matters.

The jury also found that the prosecution was "maliciously" brought by the appellant company. The company, however, must act through its officers and agents; and the finding that the company acted with malice is inconsistent with the findings as to the reasonable and proper conduct of the officers; and it was particularly found that the action of Mr. Williams, who directed all the proceedings on the part of the company, was without "any hatred, ill will, or malice toward the plaintiff."

The jury found also that there was not "any probable cause for the prosecution." This is but a conclusion, a conclusion of law for the court in case the facts are not in dispute; and if it were a conclusion of fact, the facts found from which the conclusion should be drawn, in case of doubt, themselves show, as we have seen, that there was probable cause; even though the trial disclosed that the appellee was in fact innocent.

Other findings are mere matters of evidence, and are out of place in the verdict. It is a great abuse of the statute authorizing special verdicts by way of answers to interrogatories, and wholly inexcusable, to unduly multiply interrogatories, and thus confuse the mind of the jury, and bury the few material facts of a case in a mass of verbiage.

The contention that the evidence does not support

the issues as found for the appellant cannot be sustained. On the contrary, many of the findings for the appellee are without sufficient support in the evidence.

As the material facts in issue, as found by the jury, show that the appellant did not act from malice or without probable cause, it follows that the court erred in entering judgment for the appellee. The judgment is therefore reversed, with instructions to enter judgment on the verdict in favor of the appellant.