## HUTCHINSON *v.* WENZEL.

[No. 18,771.   Filed March 28, 1900.   Rehearing denied June 8, 1900.]

MALICIOUS PROSECUTION.—*Evidence.*—*Sufficiency.*—In the trial of an action for malicious prosecution it was shown that plaintiff sold defendant a note purporting to have been executed by plaintiff's brother-in-law, a non-resident of the State; that plaintiff and defendant had resided in the same city for a number of years and plaintiff's reputation for honesty and integrity was good, but the alleged maker of the note was unknown to defendant. When the note matured defendant wrote the maker requesting payment, and was informed by letter that the note was a forgery, whereupon he sent an officer for plaintiff, who gave a minute detail of the transaction out of which the note was given, and offered to give defendant security in double the amount of the note until the validity thereof could be verified; but that defendant in disregard of plaintiff's statement and offer, and without advising with the prosecuting attorney, who was present, and against the advice of the chief of police, filed an affidavit against plaintiff charging him with uttering a forged note, upon which a warrant was issued and he was taken into custody. An indictment was subsequently returned against plaintiff, charging him with the offense, but a *nolle prosequi* was entered for the reason that the maker of the note had appeared before the grand jury and testified that the note was genuine. *Held*, that the evidence was sufficient to support a judgment for plaintiff.   *pp. 50-53.*

SAME.—*Probable Cause.*—*Instruction.*—Where defendant caused plaintiff to be prosecuted for uttering a forged note upon receipt of a letter from the alleged maker denying the execution of the note, an instruction in an action against defendant for malicious prosecution to the effect that if defendant believed the statement contained in the letter to be true, and had no knowledge or information of any fact which would cause a man of reasonable intelligence or caution to doubt or disbelieve the statement, then there was probable cause for the prosecution, and the verdict should be for defendant, was properly refused.   *pp. 53-57.*

INSTRUCTIONS.—*Hypothetical Statement.*—The rule that a hypothetical instruction must contain a statement of all of the material facts which the evidence reasonably tends to prove applies only to the substantive and controlling facts, and not to the subsidiary and evidentiary facts.   *pp. 57, 58.*

VOL. 155—4

MALICIOUS PROSECUTION.—*Probable Cause.*—*Instructions.*—Probable cause does not depend upon the guilt or innocence of the plaintiff, but upon appearances deduced from facts known to the defendant, and information received by him, and properly investigated, of a character to produce in the mind of a reasonably prudent and cautious person the honest belief that the crime charged had been committed, and an instruction in an action for malicious prosecution to the effect that if the evidence preponderates in favor of the defendant, and establishes the crime charged, the defendant then had the right to institute the criminal proceeding against plaintiff, was erroneous, as the jury might reasonably infer therefrom that the only defense, so far as probable cause was concerned, was proof that the plaintiff was actually guilty of the crime for which he was prosecuted. *pp. 59, 60.*

From the Gibson Circuit Court.   *Reversed.*

*A. Gilchrist, C. A. De Bruler, C. A. Buskirk* and *J. W. Brady,* for appellant.

*G. V. Menzies, J. W. Spencer* and *J. R. Brill,* for appellee.

HADLEY, C. J.—Appellee sued the appellant for malicious prosecution. Verdict and judgment for appellee for $5,000. The overruling of appellant's motion for a new trial is the only error assigned.

The first reason set out in the motion, and the one most earnestly urged upon the consideration of this court, is that the verdict of the jury is not sustained by sufficient evidence.

The material facts which the evidence tends to establish follow: At the time of his arrest, the appellee, Wenzel, had resided in the city of Evansville for four years, about two miles distant from appellant, Hutchinson, and had lived near by in the county for about thirty years. Wenzel bore a good reputation for honesty and integrity among his neighbors in Evansville, and also in the county where he had previously lived. In the early part of June, 1895, Hutchinson sold Wenzel a policy of life insurance, and, as collateral security for the payment of the premium, took from Wenzel a note dated Ridgeway, Illinois, April 25, 1895, calling for

$125, and purporting to have been executed by one Mathias Bahl for value, payable to the order of Wenzel on the 25th day of December, 1896. At the time of the assignment Hutchinson promised that he would investigate the financial responsibility of Bahl, who resided at Ridgeway, sixty-four miles from Evansville. Wenzel informed Hutchinson, when the note was assigned, that Bahl was his brother-in-law. July 8, 1895, Hutchinson, having learned through a commercial agency that Bahl was a responsible man, bought the note, which he held as collateral security, giving Wenzel therefor the face value in cash, less the amount of insurance premium and a small sum of borrowed money. One Kettle was a solicitor of insurance for Hutchinson, and, with the latter's knowledge and advice, Kettle procured Wenzel to introduce him among his (Wenzel's) friends, and any commission thus earned in the sale of insurance was to be shared between them. A few weeks after the sale of the note to Hutchinson, Kettle and Wenzel took to Hutchinson's office an application for insurance purporting to have been executed by one Wintenheimer. Kettle requested that the commission due on the application be advanced. The request was refused, and subsequently Wintenheimer denied signing the application, which was destroyed, and no further step taken upon it. Its execution was affirmed by Kettle and Wenzel, and denied by Wintenheimer. Wenzel could not write nor read writing, and with much difficulty wrote his name. Sixteen months later Hutchinson wrote and mailed a letter to Bahl, as follows: "Evansville, Ind., November 30, 1896. Mr. Mathias Bahl, Ridgeway, Ill. Dear Sir: Your note of $125, April 25, 1895, bearing six per cent. interest from date, given John M. Wenzel, is payable to me. Please advise where I shall send same for collection. Or, if you prefer, remit amount of note, with six per cent. interest from date, to me, and I will forward note to you canceled. Yours very truly, Alexander Hutchinson." In due course of mail, eleven days later, appellant

received a letter purporting to come from Bahl, of date and words following: "George W. Pillow, Ridgeway, Ill. John J. Parish, Harrisburg, Ill. Lawyers. Pillow & Parish. Ridgeway, Ill., December 11, 1896. Mr. Alexander Hutchinson, Evansville, Ind. Dear Sir: Yours of November 30th at hand. Contents noted. In reply will say I never executed any note for any amount to John M. Wenzel at any time. If you have such a note it is a forgery pure and simple. Very truly, Mat. Bahl." Appellant received the Bahl letter on the evening of the day following its date, and immediately called up police headquarters by telephone, and requested the services of an officer. He shortly after drove to police headquarters, and had an interview with the chief, which resulted in the chief sending an officer, without a warrant, to bring Wenzel in. When Wenzel arrived, he most earnestly asserted to appellant, in the presence of chief of police Covey, the genuineness of the note, and that Bahl would not deny its execution if confronted with it, and gave a minute detail of the transaction out of which the note grew, and the names of four persons, all residents of Ridgeway, who were present, and knew all about the transaction, among them a justice of the peace, who, with other papers, wrote the note; and at the same time exhibiting to appellant two other notes executed in the same transaction to him by Bahl, and written by the same justice. Wenzel also at the same time offered to give appellant security in double the amount of the note, to stand until the integrity of the note could be investigated. Appellant, without any knowledge of Bahl except such as he had learned through a commercial agency concerning his solvency, without any effort to communicate with Bahl further, or with any of the persons alleged to have been present when the note was executed, and without effort to learn Wenzel's standing among his neighbors, and without any step to verify Wenzel's guilt further than to compare the signature to the note with that to the letter addressed to him under date of De-

cember 11th, and disregarding the statement of the chief of police, who told him he thought Wenzel "talked all right", and neglecting to advise with the prosecuting attorney, who was present, of his own motion executed an affidavit prepared for him by the city clerk, charging Wenzel with uttering a forged note, upon which affidavit a warrant was issued, and Wenzel taken into custody.

On December 22nd an indictment was returned by the grand jury, charging Wenzel with the offense, and, subsequent to the return of the indictment, the prosecuting attorney moved that a *nolle prosequi* be entered, stating in his motion as a reason therefor that Mathias Bahl had appeared before the grand jury, and testified under oath that the alleged forged note was his genuine note, executed by him to Wenzel for a valuable consideration. The motion was sustained, and appellee discharged. Upon the trial the defendant, Hutchinson, offered no evidence tending to prove Wenzel's guilt.

As we have reached the conclusion that this appeal must be sustained, it must suffice for us to say, in respect of the first point presented, that, after a careful examination of the evidence, we fail to perceive sufficient ground for disturbing the judgment for want of evidence to support the verdict.

It is next urged that the court erred in refusing to give to the jury appellant's request number four. In this instruction the court was requested to charge the jury, in substance, that if they found from the evidence that Wenzel sold to the defendant the note in question, which purported to have been made by Mathias Bahl; that on the 30th day of November, 1896, the defendant wrote to Bahl the letter above set out; that in answer to that letter the defendant received from Bahl the letter of December 11th, above set out; that if the jury "further find that the defendant had at said time no knowledge or information of any fact which would cause a man of reasonable intelligence and caution to doubt or disbelieve the statement in said letter that said

note was a forgery, and that the defendant did believe such statement", then there was probable cause for the prosecution, and the verdict should be for the defendant.

There are certain settled principles of the law that must be applied in determining the accuracy of the instruction objected to: (1) In actions for malicious prosecution "where the facts are not disputed the court must decide, as matter of law, whether they do or do not constitute probable cause; but where they are disputed, then the court must hypothetically state the material facts which there is evidence fairly tending to prove, and positively direct as to the law upon the assumed state of facts." *Pennsylvania Co.* v. *Weddle*, 100 Ind. 138, 147; *Cottrell* v. *Cottrell*, 126 Ind. 181. (2) "Probable cause" is "that apparent state of facts found to exist upon reasonable inquiry; that is, such inquiry as the given case renders convenient and proper, which would induce a reasonably intelligent and prudent man to believe the accused person had committed, in a criminal case, the crime charged." *Lacy* v. *Mitchell*, 23 Ind. 67; *Hays* v. *Blizzard*, 30 Ind. 457; *Richter* v. *Koster*, 45 Ind. 440; *Graeler* v. *Williams*, 55 Ind. 461; *Pennsylvania Co.* v. *Weddle, supra.*

The position assumed by the appellant seems to be that, if the Bahl letter was of a character to create in the mind of a person of reasonable intelligence and caution the belief that Wenzel was guilty, and did in fact create such belief in the mind of the defendant, that fact alone constituted probable cause. We can not approve this doctrine. A belief, however honest, if suddenly acquired upon information not known to be true, will not justify a prosecution if formed upon inadequate inquiry under circumstances which afford reasonable and convenient opportunity to verify such belief, and which prudent men would investigate before acting. The belief of an accuser counts for nothing when carelessly or recklessly formed upon a single item of information, if it be shown that he failed to inquire into other

reasonable and convenient sources pointed out to him that would have established the innocence of the accused. There must be real, honest belief, and reasonable grounds upon all the appearances after such investigation as a prudent person would make, under the circumstances of the case, to afford a justification. *Lacy* v. *Mitchell*, 23 Ind. 67; *Bitting* v. *Ten Eyck*, 82 Ind. 421, 42 Am. Rep. 505; *Flora* v. *Russell*, 138 Ind. 153, 160; *Fisher* v. *Hamilton*, 49 Ind. 341, 347; *Graeter* v. *Williams*, 55 Ind. 461; *Walker* v. *Camp*, 63 Iowa 627; *Grinnell* v. *Stewart*, 12 Abb. Pr. 220; *Tabert* v. *Cooley*, 46 Minn. 366, 49 N. W. 124, 13 L. R. A. 463; *Merriam* v. *Mitchell*, 13 Me. 439; *Travis* v. *Smith*, 1 Pa. St. 234.

Appellant had no knowledge of Bahl except as to his solvency. His age, his memory, his veracity, his possible craftiness, his handwriting, were unknown to him. He lived outside the jurisdiction of the court. In acting upon the letter, he was required to trust the memory, the veracity, the accuracy, and good faith of a total stranger whom he had never seen. The letter imported no greater verity than the note. It was on the letter-head of lawyers who might have written in unauthorized language, and in a spirit of reckless intimidation. It was signed "Mat Bahl"; the note, "Mathias Bahl." How could the defendant tell which was the true signature, and whether either or both?

In the sixteen months appellant had owned the note, Wenzel had resided in the city, had visited appellant's office, and nothing had occurred in his conduct to arouse the slightest suspicion that the note was a forgery. The fact is that when the affidavit was filed the appellant was not in possession of an item of legal evidence that the note was a forgery; nor had he any reasonable ground to believe that he could produce any such evidence. Bahl was a non-resident, and had not promised to attend the trial.

Information that will constitute probable cause must relate to such facts as strongly tend to establish the crime charged accompanied with reasonable ground for the ac-

cuser to believe that he will be able to produce competent and sufficient evidence thereof upon the trial. The information must be, as said in *Barron* v. *Mason*, 31 Vt. 189, "of such directness and certainty, as to gain credit with prudent men, of the existence and susceptibility of proof of such facts as show guilt; or which the defendant, upon proper advice, supposed would constitute guilt. This is the result of the decided cases and of common experience upon the subject."

On the other hand, as against the Bahl letter, when appellant confronted Wenzel at police headquarters, and before the affidavit was filed, the latter most earnestly protested his innocence, and repeatedly asserted that Bahl would not deny the note if particularly called to his attention, and gave a minute and circumstantial account of the transaction out of which the note grew, and the names of four persons, all then residents of Ridgeway, who were present, and knew all about it, and among them a justice of the peace, who, with other papers, wrote the note in controversy; and in that connection drew from his pocket and exhibited to the appellant two other notes signed by Bahl, which he asserted were executed to him by Bahl in the same transaction, and which appeared in the same justice's handwriting; and offered to give appellant security in double the amount of the note, to stand until the matter could be investigated. Wenzel had lived thirty years in the county and four in the city, and bore a good character for honesty. It must be inferred that appellant knew of this character, or at least believed in it, or he would not, sixteen months before, have advised Kettle to engage Wenzel to introduce the former among the latter's friends and acquaintances for the purpose of soliciting insurance for appellant to' write. Without good character, introduction would have been unprofitable. Under these circumstances, we can not say, as a matter of law, that an ordinarily prudent and cautious man, free from malice and passion, and actuated only by an

honest purpose, would not have availed himself of the modern methods of easy and speedy communication to investigate the circumstantial account of the note.   This reasonable precaution would have avoided all injury, for the sequel shows that a subsequent letter from appellant to Bahl speedily brought his money, and the complete vindication of Wenzel.   The facts assumed in instruction number four, in view of the other evidence, did not constitute probable cause, and it was therefore properly refused.

Complaint is also made of the action of the court in giving instructions C and D, given by the court of its own motion.   The court charged the jury, in substance, by "C," that if it had been proved by a preponderance of the evidence that, prior to the date of either of the letters above set out, Wenzel had sold and assigned to the defendant, Hutchinson, the note mentioned in the letters, and that shortly before the note became due defendant wrote and mailed to the maker of the note the above letter, dated November 30, 1896, and in due course of mail received the letter addressed to him under date of December 11, 1896; that upon the receipt of the letter by the defendant he at once procured a policeman to arrest Wenzel, and take him to police headquarters; that while at headquarters, and before the defendant had made and filed with the clerk of the police court the affidavit set out in the evidence, the defendant held a conference with Wenzel, in the presence of the chief of police, in which Wenzel denied his guilt as charged, and asserted that the note was the genuine note of Bahl, the apparent maker, and then and there gave the names and residence of real persons who knew of the manner of the execution of said note; that Wenzel was a person who bore a good reputation for honesty in the neighborhood where he lived, and was well known, which was known to the defendant at the time he made the affidavit, or which could have been easily and without inconvenience ascertained by him; that the defendant at the time had no knowl-

edge or information as to the character of Bahl for truthfulness or honesty; and if they further found, by preponderance of the evidence, that the note in controversy was the genuine note of Mathias Bahl,—then, in view of the facts suggested, the defendant did not have probable cause to institute said prosecution at the time of making the affidavit. "D  On the other hand, if the evidence preponderates in favor of the defendant, and establishes the forgery of the note in controversy, and the defendant wrote and mailed to Bahl the letter quoted in the last instruction, and received from Bahl the letter already quoted, then, on receipt of said letter, the defendant, Hutchinson, had the right to make and file the affidavit before mentioned, and had a right to institute the criminal proceedings complained of."

It is insisted that instruction C is bad for omission from the hypothesis of the material facts: (1)  that before receiving the letter from Bahl, appellant had learned through a commercial agency that Bahl was a man of means; (2) that Bahl was Wenzel's brother-in-law; (3) that before making the affidavit, appellant compared the signature to the Bahl letter with the signature to the note in controversy; and (4) the claim made by Wintenheimer that he did not execute the application for insurance asserted by Kettle and Wenzel.  We concede the rule to be that all the *material* facts which the evidence reasonably tends to prove shall be stated in the hypothesis in such a case.  The rule, however, must be taken in its reasonable sense to apply only to the substantive and controlling facts—facts essential to the validity of the hypothesis, and not the subsidiary and evidentiary facts. *Pennsylvania Co.* v. *Weddle*, 100 Ind. 138, 144. Otherwise, it would be difficult to tell where the trial judge should stop short of a recapitulation of the evidence and reasonable inferences, which can not be contemplated by the rule.

We can not see how the absent facts above suggested

were material to the defense in the sense defined. And that the appellant did not so regard them upon the trial is apparent from the omission of all but the last one from any body of facts submitted to the court for the jury as the defendant's hypothetical case.

With respect to the fourth omission, it related to the controversy between Wintenheimer and a discredited witness on the one side, and Kettle and Wenzel on the other. It was only a dispute, a question of veracity of the parties, that was never in any way confessed or determined; and it may well be doubted if it were competent evidence as tending in any degree to impeach the honesty of Wenzel. Instruction C was properly given to the jury.

A more serious question arises upon instruction D. By it the jury were, in effect, charged that if the evidence preponderates in favor of the defendant, and establishes the forgery of the note in controversy, the defendant then had the right to institute the criminal proceedings against the plaintiff. From the words here employed, the jury had the right to believe that the defense stated in the instruction excluded all others, and that the defendant was required to establish the forgery of the note by a preponderance of the evidence, or fail in his defense. In other words, the jury might reasonably infer from the instruction that the only defense open to the defendant, at least so far as probable cause was concerned, was proof that the plaintiff was actually guilty of the crime for which he was prosecuted. There are two fatal vices in this instruction: (1) The burden rested upon the plaintiff, and not upon the defendant, to establish want of probable cause. *Workman* v. *Shelly*, 79 Ind. 442, 445; *Swindell* v. *Houck*, 2 Ind. App. 519, 523. (2) Probable cause did not depend upon the guilt or innocence of the plaintiff, but upon appearances deduced from facts known to the defendant, and information received by him, and properly investigated, of a character to produce in the mind of a reasonably prudent and

cautious person the honest belief that the crime charged had been committed. *Hays* v. *Blizzard,* 30 Ind. 457, 459; *Lytton* v. *Baird,* 95 Ind. 349, 352, and cases cited. We can not say that this instruction did not mislead the jury.

For error of the court in giving to the jury instruction D, the judgment must be reversed. Judgement reversed, with instructions to sustain the motion for a new trial.