COMMERCIAL CREDIT CORP. *v.* ENSLEY ET AL.

[No. 769A140. Filed December 1, 1970. Rehearing denied December 22, 1970. Transfer denied March 3, 1971.]

152

*Alan H. Lobley, Ice Miller Donadio & Ryan,* of counsel, of Indianapolis, *Scifres, Hollingsworth & Martin,* of Lebanon, for appellant.

*Sherwood Blue, Arch N. Bobbitt, Ruckelshaus, Bobbitt, & O'Connor,* of counsel, of Indianapolis, *Eugene B. Burns,* of Lebanon, for appellees.

HOFFMAN, P.J.—Defendant-appellant appeals from a judgment in favor of plaintiffs- appellees in an action for the malicious prosecution of attachment proceedings. The trial court, without a jury, awarded $75,500 compensatory damages and $35,000 punitive damages to plaintiffs-appellees.

It is the well-established law in Indiana that "[t]he decision of the trial court comes to us clothed with the presumption that a correct result was reached and the burden is upon appellant * * * to overcome that presumption." *A.S.C. Corporation* v. *First Nat. Bank, etc.,* 241 Ind. 19, at 23,

167 N. E. 2d 460 at 462 (1960) ; *Souerdike* v. *State,* 231 Ind. 204, 206, 108 N. E. 2d 136, 138 (1952).

In reviewing the record before us we may consider only the evidence most favorable to appellees, together with any reasonable inferences which may be drawn therefrom, and it is only when there is no conflict in the evidence and it can lead only to a conclusion contrary to the one which the trial court reached, will the decision be reversed. *A.S.C. Coporation* v. *First Nat. Bank, etc., supra; Souerdike* v. *State, supra; Pokraka* v. *Lummus Co.,* 230 Ind. 523, 529, 532, 104 N. E. 2d 669 (1952).

The pertinent facts most favorable to appellees are as follows:

In December, 1958, Jack Ensley, Inc., an Indiana corporation, was owned and operated by plaintiffs-appellees as a dealer in foreign automobiles. Defendant-appellant entered into certain contracts whereby it agreed to provide a line of credit to Jack Ensley, Inc., for the purpose of financing the acquisition for sale, or resale, of new and used automobiles under a floor plan arrangement, and to provide retail financing to the customers of Jack Ensley, Inc., in the purchase of automobiles. Plaintiffs-appellees, as a part of the financing arrangement, personally guaranteed the floor plan financing of Jack Ensley, Inc.

In 1960 and early in 1961, disagreements arose and existed between the litigants here involved regarding certain matters pertaining to the operation of the automobile dealership and the manner in which the financing of new and used cars was being handled. Appellees questioned whether or not payments made by Jack Ensley, Inc., were being properly credited by appellant. Each accused the other of wrongdoing and, as a result of statements made and numerous telephone calls at all hours, as well as several visits to the home of appellees—some by representatives of appellant from Chicago—appellees were put in fear for their personal safety and the safety of their

children as well as the security of their possessions, both real and personal.

Indicative of the threats made by representatives of appellant is the following testimony given by appellee-Jack Ensley, on direct examination: "Mr. Luckhardt and Mr. Hull came in * * *, Mr. Luckhardt said Jack you've got to get over this insane idea of yours about asking for an accounting, * * * you know I'm not going to give it to you, * * * you know we're a big outfit and * * * we can keep that attachment on you for the rest of your life, we can fix it so that your wife won't have anything and your kids won't eat and we'll keep you locked up with that attachment for the rest of your life * * *. [W]e'll never let you off this thing in twenty years * * *."

Further, appellee-Beni Ensley testified, on direct examination, that she "had several phone calls * * * late at night all times of the morning and everything else and one night this man called me about four in the morning and said that he was representing Commercial Credit and said that we should keep a better eye on our children and I hung up and later on it sounded like the same man called and said that you Ensleys are really brave, we'll see just how brave and that I should really watch my children." And, further, "[T]he children and I were sitting on the back padio [patio] of our home and all of a sudden someone jumped the fence and he had on what I would call short pants and a funny hat and sun glasses and after these threats I didn't know who it was, so I got the children up and took them in the house as fast as I could and he came up on the porch and pushed me inside the door and he says you know me Mrs. Ensley and I said I don't know you at all and he took his glasses off and he said I'm Norman McDonald from Commercial Credit and he said they instructed me to find you and give you these and handed me letters."

This testimony of appellees was not disputed by appellant.

In an effort to resolve the disputes, appellees and Jack Ensley, Inc., on April 19, 1961, filed an action for accounting and damages against appellant, its president and his assistant. The action was still pending in Room 2 of the Superior Court of Marion County, Indiana, as Cause No. S61-2697, at the time the judgment herein was entered by the Boone Circuit Court.

On April 25, 1961, the same day on which appellant appeared specially in the action for accounting, it instituted attachment proceedings against appellees in the Marion Circuit Court. Appellant alleged in its affidavit for attachment that appellees were non-residents of the State of Indiana, were residents of the State of Florida, and had so concealed themselves that summons could not be served upon them, and further stated that it sought to recover from appellees $44,680.26 upon a certain contract.

Also, on April 25, 1961, appellant, as principal, with United States Fidelity & Guaranty Company, as surety, executed and filed its attachment bond and on the same day, an order of attachment was issued by the Clerk of the Marion Circuit Court to seize and take into possession the personal property and attach the land of appellees in Marion County, or so much thereof as would satisfy the claim for $44,680.26.

On April 25, 1961, appellant caused the Sheriff of Marion County, Indiana, to attach certain lands belonging to appellees which at that time had a fair market value of $750,000. The land when attached was not a single parcel but had previously been divided and was capable of further division so that the attachment of a smaller parcel thereof would have been sufficient to satisfy the claim of $44,680.26.

On August 13, 1962, acting on motion of appellees, the Marion Circuit Court quashed the proceedings in attachment, the service of the writ of attachment, the Sheriff's amended return thereto, and entered judgment for appellees. Appellant appealed the judgment to the Appellate Court of Indiana and, on June 12, 1964, the judgment of the Marion Circuit Court

was affirmed.[1] On July 10, 1964, appellant's petition for rehearing was denied. On October 1, 1964, the Supreme Court of Indiana denied appellant's petition to transfer. On October 26, 1964, the Clerk of the Supreme and Appellate Courts certified to the Marion Circuit Court a copy of the opinion of the Appellate Court affirming the judgment of the trial court.

The filing of the attachment proceedings by appellant, its appeal to this court, petition for rehearing, petition to transfer to the Supreme Court, and the certification of the opinion of this court to the Marion Circuit Court covered the period from April 25, 1961 to October 26, 1964. During this 42-month period appellees were deprived of the free and unencumbered use of their land.

On November 20, 1964, the action for malicious prosecution of attachment proceedings, which resulted in this appeal, was commenced by appellees. Appellant pleaded—by affirmative defense—that the statute of limitations had run and that the action was barred.

At the request of both parties, the trial court made its finding of facts and stated conclusions of law thereon.

Appellant's sole assignment of error is the overruling of its motion for a new trial. The motion for a new trial contains 21 grounds which include: the decision of the trial court is not sustained by sufficient evidence, the decision is contrary to law, and the damages are excessive.

Appellant has chosen to brief and argue only three specific contentions: 1) the defendant-appellant had probable cause as a matter of law; 2) the statute of limitations had run prior to the time the plaintiffs commenced this action; and 3) the trial court erred in awarding damages that accrued after the dissolution of the attachment.

The elements of malicious prosecution set forth in 3 Restatement, *Torts*, § 677, at 454 (1938), are as follows:

---

1. *Commercial Credit Corp. v. Ensley*, 136 Ind. App. 389, 199 N.E. 2d 108 (1964), (Transfer denied),

"Initiation of Civil Proceedings Causing an Arrest or a Deprivation of Property.

"One who by initiating civil proceedings against another causes him to be arrested or deprived of the possession of his land or chattels or other things is liable to him for the harm done thereby if

(a) the proceedings are initiated
   (i) *without probable cause,* and
   (ii) primarily for a purpose other than that of securing the adjudication of the claim on which the proceedings were based, and

(b) except where they are ex parte, the proceedings have terminated in favor of the person against whom they are brought." (Emphasis supplied.) See also: *Cassidy* v. *Cain,* 145 Ind. App. 581, 251 N. E. 2d 852, (1969), (Transfer denied) ; *Dwyer* v. *McClean,* 133 Ind. App. 454, 175 N. E. 2d 50, (1961), (Transfer denied) ; *Treloar* v. *Harris,* 66 Ind. App. 59, 117 N. E. 975 (1917).

Appellant contends that it did have probable cause to believe that appellees were no longer residents of Indiana and were residents of Florida based upon the following statement which appeared at the bottom of a signed letter dated March 6, 1961, from appellee-Jack Ensley to his counsel in Indianapolis:

"I forgot to mention that we have given up our residence in Indiana, and are establishing permanent residence in Florida."

Probable cause exists when from an apparent state of facts, found to exist, a reasonably intelligent and prudent person would be induced to act as did the person who is charged with the burden of having probable cause to act. *Cassidy* v. *Cain, supra; Dwyer* v. *McClean, supra; Hutchinson* v. *Wenzel,* 155 Ind. 49, 56 N. E. 845 (1900) ; *Terre Haute, etc. R. Co.* v. *Mason,* 148 Ind. 578, 46 N. E. 322 (1897).

In *Cleveland, etc. R. Co.* v. *Dixon,* 51 Ind. App. 658, at 661-662, 96 N. E. 815, at 816 (1912), this court stated:

"It is well settled by the authorities of this court and the Supreme Court that the question whether *under a given state of facts* probable cause existed *is a question of law* for the court and not a question of fact for the jury. ' "What facts and circumstances amount to probable cause is a pure question of law. Whether they exist or not in any particular case is a pure question of fact. The former is exclusively for the court, the latter for the jury. This subject must necessarily be submitted to the jury when the facts are in controversy, the court instructing them what the law is." ' *Pennsylvania Co.* v. *Weddle* (1885), 100 Ind. 138, 147, and authorities cited." See also: *Dwyer* v. *McClean, supra.*

In the instant case there was no jury, the trial court was the sole finder of fact. Appellees testified that the postscript quoted above was put on the letter knowing that it would be shown to appellant, and that the reason for the statement was to stop the "harassment" and in an effort to keep appellant from "hounding" appellees. Appellees sold their home at 4570 North Kessler Boulevard, Indianapolis, and leased their previous home at 3641 Watson Road, Indianapolis, and moved their household furniture to the Watson Road address. Appellees were not hiding from appellant's representatives. In fact, they had been visited on April 17, 1961, by a representative of appellant. They were represented by counsel in Indianapolis who were in constant contact with appellant in attempting to settle the disputes. Appellees had initiated litigation in Marion County seeking an accounting. Appellant was aware of the Watson Road address, mail had previously been sent to appellees at that address and personal visits had been made.

From the evidence in the record in the instant case there was presented to the trier of fact conflicting evidence supporting opposing theories on probable cause from which the trial court was obliged to choose and then conclude as a matter of law either the existence or the nonexistence of probable cause.

Based upon evidence contained in the record, the trial court was justified in concluding that appellant was without probable cause when it instituted the proceedings in attachment.

After a review of the entire record we cannot say that the evidence regarding probable cause leads to only one conclusion and that conclusion is contrary to the one reached by the trial court. Therefore, the findings and conclusions of the trial court with respect to the issue of probable cause must be affirmed. *A.S.C. Corporation* v. *First Nat. Bank, etc., supra,* 241 Ind. 19, 167 N. E. 2d 460 (1960) ; *Souerdike* v. *State, supra,* 231 Ind. 204, 108 N. E. 2d 136 (1952).

That there is a two-year statute of limitations which applies to actions for malicious prosecution in Indiana[2] is not contested. The issue to be decided is when the action for malicious prosecution accrued.

Appellant asserts that the action accrued on August 13, 1962—when the Marion Circuit Court quashed the proceedings in attachment—and because such action was not commenced until November 20, 1964, it is barred by the applicable statute of limitations. Appellees, on the other hand, argue that the action did not accrue until October 26, 1964, when the opinion of this court was certified to the Marion Circuit Court and, thus, the filing of this suit on November 20, 1964, was well within the statutory period.

Appellant cites several cases which tend to support its position but cite no Indiana cases which involve malicious prosecution. *Levering* v. *National Bank of Morrow County,* 87 Ohio St. 117, 100 N. E. 322 (1912), however, did involve an action for malicious prosecution and the Supreme Court of Ohio held that a proceeding in error did not toll the one-year statute of limitations and affirmed a judgment for defendant-appellee. Our interpretation of *Levering* is that the decision turned on the difference between a "proceeding in error" and a "statutory appeal" under the applicable Ohio statutes. The court at 323 of 100 N. E. stated:

"The general rule is that, until the original suit between the parties has been legally terminated in favor of the plain-

2. Acts 1967, ch. 301, § 2, p. 999, Ind. Stat. Anno., § 2-602 (First), Burns' 1957 Repl.

tiff in the malicious prosecution action, the latter has no remedy, because until that point is reached no presumption of malice and want of probable cause arises."

And, further, at page 324 of 100 N. E.:

"[D]istinction is clearly drawn between a proceeding in error and a statutory appeal, by which in certain cases the original case is brought up to the superior court for review de novo, upon the facts and the law, merely by giving notice to the adverse party and giving a bond, in the trial court."

In Indiana, under our statutory appeal, the suit is not legally terminated until it has been finally decided by our court of appeals to which it is finally submitted, and its opinion certified to the trial court.

Appellant also relies upon *Waring* v. *Fletcher,* 152 Ind. 620, 52 N. E. 203 (1899). Appellant cites *Waring* for the proposition that an appeal in the State of Indiana, without filing an appeal bond, does not suspend the judgment from which the appeal is taken. We are in complete agreement with that statement and agree that it is the law in Indiana. However, that is not the issue here—the question to be decided in this appeal is *when* the action for malicious prosecution accrued.

Where a litigant is prevented from *enforcing* his remedy because of pending legal proceedings, the time during which he is thus prevented will not be counted against him in determining whether a statute of limitations has barred his action. *State ex rel. Pink* v. *Cockley,* 110 Ind. App. 417, 37 N. E. 2d 284 (1942), (Transfer denied); *The City of Fort Wayne* v. *Hamilton, et al.,* 132 Ind. 487, 32 N. E. 324 (1892); 19 I.L.E., *Limitation of Actions,* § 71, p. 56.

It is true that appellees could have filed the suit for malicious prosecution before the outcome of the pending appeal—instituted by appellant—was known. We are of the opinion, however, that appellees could not have *enforced* their remedy until *final disposition* of the attachment proceedings, *i.e.,* October 26, 1964. To hold appellees' action was barred by the statute of

limitations would have the effect of forcing parties to initiate litigation with the full knowledge that it may be made groundless. This we will not do.

We are in agreement with Comment on Clause (b) of 3 Restatement, Torts, § 674, at 444-445 (1938), which is as follows:

> *"g. Termination in favor of the person against whom civil proceedings are brought.* Civil proceedings may be terminated in favor of the person against whom they are brought under the rule stated in Clause (b), (1) by the favorable adjudication of the claim by a competent tribunal, or (2) by the withdrawal of the proceedings by the person bringing them, or (3) by the dismissal of the proceedings because of his failure to prosecute them. A favorable adjudication may be by a judgment rendered by a court after trial or upon demurrer or its equivalent. In either case the adjudication is a sufficient termination of the proceedings, unless an apeal is taken. *If an appeal is taken, the proceedings are not terminated until the final disposition of the appeal and of such further proceedings as it may entail."* (Emphasis supplied.)

Our decision regarding the statute of limitations is only applicable to suits for malicious prosecution. Justice would be defeated if we were to hold that the statute of limitations began to run *before* an essential element of malicious prosecution, *final* termination in favor of the plaintiff, occurred.

Appellant's third specification of error is that the trial court erred in awarding damages which arose after the dissolution of the attachment. Appellant contends that it was error for the trial court to award $25,000 damages which resulted from forced sales of parcels of land. The sales occurred on or about October 1, 1962, October 10, 1962 and December 18, 1962. Also, appellant contends that there is not sufficient evidence to sustain the court's finding that appellees sustained damages in the amount of $42,500 by reason of attorneys' fees for services rendered after the dissolution of the attachment.

In support of these contentions appellant cites *Waring* v. *Fletcher, supra,* 152 Ind. 620, 52 N. E. 203 (1899), and argues

that the appeal had no effect on the dissolved attachment and that the damages in question were incurred—if at all—after August 13, 1962, and it was error for the court to award them.

In *Dwyer* v. *McClean, supra,* at 457 of 133 Ind. App., at 52 of 175 N. E. 2d, this court set out the measure of damages in an action for malicious prosecution, as follows:

> "In an action for malicious prosecution the plaintiff may recover all damages which are the natural probable consequences of the malicious prosecution complained of."

Appellant would have us ignore a fact of which we take judicial notice, *i.e.,* an appeal from a judgment affecting an encumbrance on land places a cloud on the title to such land which is not removed until final adjudication of the appeal.

That an appeal will have an effect on a dissolved attachment is recognized in 3 I.L.E., *Attachment,* § 62, p. 243:

> *"In the absence of an appeal,* once an attachment is dissolved it has no more effect than if it had never been issued, and as regards the property attached, the parties are put in the same position as if no attachment had occurred." (Emphasis supplied.)

The record before us contains sufficient evidence that appellant initiated the attachment proceedings without probable cause, with malice, and for the purpose of harassing appellees, and attached real estate valued at $750,000 to secure a claim of less than $45,000. Also, that appellant continued to prosecute the attachment until the petition to transfer was denied by the Supreme Court of Indiana with full knowledge of the effect that such action was having on appellees' free and unencumbered use of their land.

Further, there is evidence in the record which supports the finding by the trial court that the damages to which appellant objects were the natural and probable consequence of the malicious prosecution complained of.

In the instant case the trial court was the sole judge of the demeanor and credibility of the witnesses as well as the weight to be given to all the evidence. All conflicts in the evidence and any reasonable inferences to be drawn from such evidence were to be determined by the trial court as the finder of fact. *A.S.C. Corporation* v. *First Nat. Bank, etc., supra; Midwest Oil Company, Inc.* v. *Storey,* 134 Ind. App. 137, 178 N. E. 2d 468 (1962), (Transfer denied) ; *N.Y.C. & St. L. R. Co.* v. *Merc. Natl. Bk.,* 130 Ind. App. 638, 165 N. E. 2d 382 (1960), (Transfer denied).

Within the established framework of appellate review, no reversible error was committed by the trial court.

Judgment affirmed.

Pfaff and Sharp, JJ., concur; White, J., dissents with opinion.

### DISSENTING OPINION

WHITE, J.—The burden was on the plaintiffs-appellees to prove, as an element of their cause of action, that defendant-appellant sued out the writ of attachment without probable cause. "This is one of the cases in which a plaintiff must prove a negative."[1]

The evidence before the trial court relevant to that issue was not in conflict. It established the following undisputed facts:

1. In January 1961, the Ensleys sold their house on Kessler Boulevard and moved to Watson Road and received mail from Commercial Credit Corporation at that address.

2. Later in January of 1961, the Ensleys purchased a house on Atlantic Boulevard in Fort Lauderdale, Florida and moved their family into that house.

3. On March 10, 1961, the general counsel of Commercial Credit Corporation wrote the Indianapolis attorney representing it as follows:

---

1. *Terre Haute and Indianapolis Railroad Co. v. Mason* (1897), 148 Ind. 578, 581, 46 N.E. 332, 333.

"Although you have been advised by their attorney that they have recently changed their domicile to Florida, that may not be so in fact. It would be in order, therefore, to check on this, even if that entails some expense."

4. In March of 1961, the Ensleys represented to Commercial Credit Corporation in writing:

"I forgot to mention that we have given up our residence in Indiana, and are establishing permanent residence in Florida."

5. On March 20, 1961, the Indianapolis attorney representing Commercial Credit Corporation wrote the general counsel of Commercial Credit Corporation:

"In addition we shall issue an attachment and put up a bond at the time the suit is commenced, under Burns' Indiana Statutes 3-501, the first paragraph. In order to better explain why this particular procedure is being followed, I wish to advise that we have in our possession a photostatic copy of a letter from Mr. Ensley directed to Sherwood Blue in which the following quotation is found:

'I forgot to mention that we have given up our residence in Indiana and are establishing permanent residence in Florida.' This letter carries Mr. Ensley's signature, and in view of all the facts involved, I am convinced with the analysis of Burns' Indiana Statutes 3-501, its first paragraph, that we are now in a better position to obtain an attachment than we would be if we were to assume that this was his residence or attempt to prove any of the other five necessary allegations of that Section. We feel that with the photostat of this letter, the Court with the filing of our complaint and our bond will immediately issue an attachment against the real estate held here in Marion County by Mr. and Mrs. Ensley."

6. On April 16, 1961, a representative of Commercial Credit Corporation contacted the Appellees at their residence on Atlantic Boulevard in Fort Lauderdale, Florida.

7. On April 19, 1961 the Ensleys filed a suit for an accounting against Commercial Credit Corporation and serv-

ice was made on Commercial Credit Corporation prior to April 25, 1961.

That evidence could lead reasonable men to but one conclusion: There was reasonable and probable cause for defendant-appellant to believe at the time that it caused appellees' real estate to be attached, that appellees were non-residents of the state. That was a statutory ground for the attachment[2] and it was immaterial that appellant's attachment affidavit also alleged that appellees were concealing themselves to avoid service of process. *Wise* v. *McNichols* (1895), 63 Mo. 141, 144. Evidence of malice is equally irrelevant to the issue of probable cause. Want of probable cause cannot be inferred from the existence of malice. *McCasland* v. *Kimberlin* (1885), 100 Ind. 121; *Bitting* v. *Ten Eyck* (1882), 82 Ind. 421. The majority finds a conflict in the evidence only because it considers evidence not relevant to the issue.

As we said in *Treloar* v. *Harris* (1917), 66 Ind. App. 59, 79, 117 N. E. 975, 981, (in which the alleged malicious prosecution was a civil action for commitment to a mental hospital) "whether there was or was not probable cause turned on the evidence relating to the facts and circumstances affecting appellee's mental condition *of which appellant had knowledge or information* at the time he instituted the proceeding. . . ." (Emphasis added.)

And as we said so recently in *Cassidy* v. *Cain* (1969), 145 Ind. App. 581, 251 N. E. 2d 852, 857, 19 Ind. Dec. 168, 175:

"As to the existence of probable cause § 675 of the Restatement of Torts states:

'One who initiates civil proceedings against another has probable cause for so doing if *he reasonably believes* in the existence of the facts upon which his claim is based, and [emphasis added]

---

2.   Acts 1881 (Spec. Sess.), ch. 38, § 197, p. 240, Burns IND. STAT. ANN. § 3-501. See also Trial Rule 64 (B).

(a) reasonably believes that under such facts the claim may be valid at common law or under an existing statute, or

(b) so believes in reliance upon the advice of counsel given under the conditions stated in § 666.' "

Since "probable cause" is a question of what defendant-appellant "reasonably believes", it is a question which cannot be answered by reciting facts which were unknown to appellant when it initiated the attachment proceedings. If we accept the validity of that self-evident proposition, we thereby eliminate from our consideration such evidence as the testimony of appelles concerning their undisclosed motive for representing to the appellant, by the postscript, that they were no longer residents of Indiana.

Furthermore, that reasoning makes it necessary (when the facts are found specially) that the trial court find that appellant did not reasonably believe that appellees were non-residents when they caused appellees' real estate to be attached. Such a finding is essential to the conclusion that the attachment was sued out without probable cause. Absent that finding of fact, the special findings are insufficient to sustain the legal conclusion of want of probable cause. And the undisputed evidence in this case is quite obviously insufficient to sustain a negative finding that appellant did not reasonably believe[3] that appellees were non-residents.

Because appellees failed to prove want of probable cause, and for that reason alone, I would reverse the judgment. On the questions of damages and statute of limitation, I concur in the result reached but not in the reasoning by which the result was reached, particularly with respect to the statute of limitations.

The majority opinion rejects *Levering* v. *National Bank of Morrow County* (1912), 87 Ohio St. 117, 100 N. E. 322, as

---

3. The appellant is a corporation and language which speaks of what appellant did or did not know or believe obviously refers to imputed or constructive knowledge or belief.

authority on the premise that an appeal to this court is in the nature of the "statutory appeal" which *Levering* distinguishes from a "proceeding in error". In my opinion appeals to this court and to the Indiana Supreme Court are essentially proceedings in error, as the distinction is drawn in *Levering*.[4] On pure "theory" *Levering* seems to me unassailable, but to adopt its rule would often lead to harsh and unjust results. Furthermore, I believe the weight of authority is to the contrary.[5]

NOTE.—Reported in 264 N. E. 2d 80.

---

4.  See Sunderland, *The Proper Function of an Appellate Court*, 5 Ind. L.J. 483, 494; *Curless v. Watson* (1913), 180 Ind. 86, 90, 102 N.E. 497.
5.  See Annotation 41 A.L.R. 2d 865.