## MILLER *v.* WILLIS ET AL.

[No. 23,309.   Filed December 1, 1920.]

1. MALICIOUS PROSECUTION.—*Probable. Cause.*—*Facts Uncontroverted.*—*Question for the Court.*—In an action for malicious prosecution, if the facts are uncontroverted, the question of probable cause is exclusively for the court.   p. 669.

2. MALICIOUS PROSECUTION.—*Probable Cause.*—*Burden of Proof.*—In malicious prosecution the plaintiff has the burden to establish that there was no probable cause for instituting the criminal prosecution at the time the defendant went before the grand jury.   p. 669.

Miller *v.* Willis—189 Ind. 664.

3. MALICIOUS PROSECUTION.—*Probable Cause.*—*Depends Upon Appearances.*—Probable cause for instituting criminal proceedings depends not upon the guilt or innocence of the plaintiff but upon appearances deduced from facts known to defendants and information received by them, and properly investigated, of a character to produce in the mind of a reasonably prudent and cautious person the honest belief that the crime charged has been committed. p. 669.

4. MALICIOUS PROSECUTION.—*Probable Cause. — Indictment. — Presumptive Evidence.*—The return of an indictment is presumptive evidence of probable cause, in a suit for malicious prosecution, hough subject to rebuttal by proof that it was induced by false testimony or other improper means. p. 670.

5. MALICIOUS PROSECUTION.—*Probable Cause.*—*Lien of Materialman.*—*Contractor Charged With Larceny.*—The owner of bungalows, and her attorney, had probable cause to believe that the original intent of a building contractor, who had done work on the bungalows at a fixed price, and who had made an affidavit showing payment of all indebtedness for plastering that might become a lien, and had thereupon received payment in full, when in fact a bill of materialman for plastering materials was unpaid and the time unexpired for filing a lien thereon, and where the subcontractor for the plastering had informed such attorney after such full payment that such building contractor was fully informed when he made the affidavit that such bill was unpaid, and after such contractor, upon having his attention called, promised to pay such bill, and for eleven months failed to pay any part of it, and failed to successfully resist a suit begun on a lien taken for such bill, was not innocent, and such facts constituted probable cause for instituting a prosecution for larceny. pp. 670, 671.

6. MALICIOUS PROSECUTION.—*Probable Cause.*—*Known Denial of Criminal Intent.*—Where the accused is known to have done acts from which a criminal intent might be reasonably inferred and was actually inferred by a grand jury, the mere fact that he denies the criminal intent does not prevent the known facts from constituting probable cause within the law of malicious prosecution. p. 671.

7. MALICIOUS PROSECUTION.—*Probable Cause.*—*Acquittal.*—In a suit for malicious prosecution, the fact that the defendants had been mistaken in their belief of the guilt of plaintiff, and that he was really not guilty and had been acquitted, is immaterial, where such belief was based upon probable cause therefor. p. 672.

From Hancock Circuit Court; *Earl Sample,* Judge.

Action by Jacob Miller against Etta Willis and another. From a judgment for the defendants, the plaintiff appeals. (Transferred from Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Affirmed.*

*Alfred R. Hovey* and *Cook & Walker,* for appellant. *H. E. Negley* and *Charles E. Henderson,* for appellees.

EWBANK, J.—The appellant sued the appellees for the alleged malicious prosecution of appellant on an indictment for grand larceny, returned by the grand jury of Marion county, Indiana.

At the conclusion of plaintiff's evidence the trial court adjudged that the plaintiff had not established that the prosecution was begun without probable cause, and instructed the jury to return a verdict for the defendants, to which instruction the plaintiff excepted. From a judgment rendered upon the verdict returned in obedience to that instruction this appeal was taken by the plaintiff.

The evidence most favorable to the appellant on the subject of probable cause for instituting the prosecution, as set out in appellant's brief, is as follows: In November, 1910, the appellant was sixty years old and was, and for twenty-two years had been, a carpenter. He was also a building contractor. He contracted with the appellee Ella Willis to build some changes and additions to certain bungalows for the agreed price of $770. They had not previously been acquainted with each other. He sublet the lathing and plastering to Laws and Roberts for $122. He paid them $40 in cash at one time, and $65.50 in cash

after the work was completed. In the meantime he had paid $8.50 on an order given by them for sand, and had sold and delivered to them some glass and sash at the agreed price of $8. On December 15, 1910, after the plastering was finished, when the $65.50 was paid, Laws and Roberts gave appellant a paper signed by them, reading: "Received of J. Miller $150 for plastering in full on Mrs. Willis houses." Thereafter appellant met Mrs. Willis at the office of her attorney, who is here her coappellee, and exhibited said receipt. Appellee Marshall, as the attorney for Mrs. Willis, prepared an affidavit which appellant signed and swore to, stating that he "has paid all indebtedness incurred by him to laborers in making said repairs and improvements; that he has paid all indebtedness incurred by him for plastering said cottages, and that the only indebtedness which now remains unpaid that was contracted for by him for and in the improvement and repairing of said cottages is two bills, one to the Hamilton Lumber Company for $268.52 and the other to A. Van Jelgerhois for $59.10, and that there are no other bills whatever that might now or at any time hereafter become a lien against said property or any part thereof. That he makes this affidavit for the purpose of inducing said Frances E. Willis (appellee) to pay him at this time the balance of said contract price for said work." That thereupon Mrs. Willis paid him $100, and a few days later caused to be paid to him the rest of such balance, being $48. In the next month (January, 1911) appellee Marshall saw appellant and told him the lathers bill was not paid, but appellant said it was. On January 20, 1911, appellee Marshal wrote a letter saying to appellant that the

next day was the last day for filing a mechanic's lien by the Southport Lumber Company (D. Grube & Son) for $49.10 for materials furnished towards plastering, and that appellant should take care of the claim and prevent a lien being filed. Appellant then went to see appellee Marshall and told him that appellant had paid the bill once, but would pay it again if the time was extended until spring and no cost was put on. Appellant then went and employed a lawyer, who went to appellee Marshall and stated that appellant claimed the bill was paid by the plasterers, and that he had made the affidavit in good faith in that belief. The lawyer also stated that appellant would pay the original bill, without costs. At the conversation in January appellant asked for time until spring on the original bill. Thereafter D. Grube & Son brought suit to foreclose the lien for the bill for plastering supplies, and appellant represented and said all the time up until the time of the decree of foreclosure that he would pay the original bill without any costs, but that he would not pay costs. A judgment was rendered foreclosing the lien, and on May 21, 1911, appellee Marshall wrote to appellant stating that fact, and demanding the full amount of the judgment and costs. At this time appellees came into possession of appellant's said receipt for $150. In July appellant met appellee Marshall on the street, and appellant said that he was ready to settle the original bill, but not the costs or attorney fee. Appellant told appellee Marshall that when he made the affidavit in question he believed the bill for plastering supplies had been paid, but the plasterer told Marshall that appellant was fully informed that it was unpaid. On November 21, 1911, both of the

appellees met at Mr. Marshall's law office, and went together to the grand jury room, where each testified before the grand jury. Previously appellee Marshall had showed to the deputy prosecuting attorney certain papers, and had made a statement to the prosecuting attorney of what he said were the facts in the case. Marshall was then acting for Mrs. Willis by direction of her son and with her knowledge. On said date of November 21, 1911, the grand jury returned an indictment against appellant for larceny in obtaining the $148 by means of an affidavit which was not true, on which indictment the appellant was arrested, tried and acquitted. Appellant has never paid the said bill of $49.10, nor any part of it.

It was not shown that appellees or either of them gave any false testimony before the grand jury, nor that any of the evidence heard by the grand jury was untrue. And it does not appear how many other witnesses also testified before the grand jury which returned the indictment.

If the facts are uncontroverted the question of probable cause is exclusively for the court. *Hutch-inson* v. *Wenzel* (1900), 155 Ind. 49, 54, 56 N. E. 1-2. 845; *Cleveland, etc., R. Co.* v. *Dixon* (1912), 51 Ind. App. 658, 662, 96 N. E. 815. The plaintiff had the burden of proof to establish that there was no probable cause for instituting the criminal prosecution against him at the time appellees went before the grand jury. *Terre Haute, etc., R. Co.* v. *Mason* (1897), 148 Ind. 578, 581, 46 N. E. 332.

Probable cause did not depend upon the guilt or innocence of the plaintiff, but upon appearances deduced from facts known to the defendants, and

3.    information received by them and properly investigated, of a character to produce in the

mind of a reasonably prudent and cautious person the honest belief that the crime charged had been committed. *Hutchinson* v. *Wenzel, supra.* And the fact that an indictment was returned by the grand jury was in itself presumptive evidence of probable cause, though subject to be rebutted by proof

4. that it was induced by false testimony or other improper means. *Terre Haute, etc., R. Co.* v. *Mason, supra; Scotten* v. *Longfellow* (1872), 40 Ind. 23, 27; 19 Am. and Eng. Ency. of Law (2d ed.) 663.

Where appellant falsely stated in his affidavit that all the bills for work done on the houses were fully paid, and made the affidavit for the express

5. purpose of inducing Mrs. Willis to pay to him a balance of $148, out of which any such unpaid bills must have been met if Mrs. Willis had known of them, and thereby induced her to pay him the money, and upon his attention being called to a bill for $49.10 which had not been paid, repeatedly promised to pay it, but did not pay any part of it, nor successfully resist an action to foreclose a lien on the property of Mrs. Willis for the amount of such bill, during four months that the action was pending, and two months after it was foreclosed again promised to pay it without costs, but had not paid any part of it eleven months after the false affidavit was made, being ten months after he first promised to pay it, on being reminded that it remained unpaid, and an indictment against plaintiff was returned and nothing was shown to the contrary, the appellees were not proved to have had no probable cause for believing that appellant made the false affidavit with the fraudulent intent to obtain the $49.10 without right; and, if he did, he would be guilty of a crime.

It appears that appellant convinced a jury that he did not have a felonious intent to steal the $49.10 which he obtained by making such affidavit. And since he told appellees that he had no such intent, but had honestly believed all the bill to be paid when he made the affidavit, he insists that they knew he was not guilty, and therefore that they had no probable cause. But if two prosecuting witnesses saw A take careful aim at B's head with a rifle, and shoot and kill him, would the fact that A told them he believed the cap worn by B to be a squirrel, and had no intention of killing B, operate to exclude the two who witnessed the killing from testifying before the grand jury to what they had seen, under penalty of being liable in damages to A if the grand jury should return an indictment and the jury before whom he was tried for murder should acquit him? Assuredly not. Actual knowledge or apparently reliable information, believed to be true after due investigation, of facts from which a reasonable and prudent person might form an honest belief that the accused person was guilty of the crime charged, amounts to probable cause. And where the accused is known to

6. have done acts from which a criminal intent might reasonably be inferred and was actually inferred by a grand jury, the mere fact that he denies the criminal intent does not prevent the known facts from constituting probable cause.

Whatever may have been appellant's belief when he signed the affidavit, it became his moral and legal duty, upon learning that a bill remained un-

5. paid which he had sworn was satisfied, to pay that bill. And after he had repeatedly promised to do so, but had not paid any part of it at the

expiration of eleven months, appellees had probable cause to believe that his original intent in making the affidavit and thereby procuring $49.10 to be paid to him, which was really due the materialman, was not innocent.

The mere fact that appellants were mistaken in their belief of appellant's guilt, based upon such probable cause, and that appellant was not 7. really guilty, and was afterward acquitted of the criminal charge, is immaterial. *Bitting* v. *Ten Eyck* (1882), 82 Ind. 421, 424, 42 Am. Rep. 505; *Hutchinson* v. *Wenzel, supra.*

The judgment is affirmed with costs.