David J. SCRUBY, M.D., Appellant
(Defendant Below),

v.

James V. WAUGH, Appellee
(Plaintiff Below).

No. 1–1084A238.

Court of Appeals of Indiana,
First District.

April 18, 1985.

Joe Tipton, Edna M. Koch, Dillon & Cohen, Indianapolis, for appellant.

Michael D. Gross, Lebanon, for appellee.

ROBERTSON, Judge.

Plaintiff-appellee James V. Waugh (Waugh) filed a complaint in the trial court against the defendant-appellant David J. Scruby, M.D. (Scruby) for wrongful commitment to a mental hospital. Scruby moved for a summary judgment contending first, that the trial court lacked subject matter jurisdiction because Waugh failed to submit his claim first to a Medical Review Panel as required by the Indiana Medical Malpractice Act, IND.CODE §§ 16–9.5–1–1, *et seq.* (1982); second, that even assuming arguendo that the trial court had subject matter jurisdiction, he would be immune under Indiana law from civil actions based upon statements given by him in the aid of a mental illness emergency commitment; third, that as a matter of law, no matter what wrongful conduct might be attributed to him, such conduct could not have been the proximate cause of Waugh's commitment for an emergency detention to a mental hospital. The trial court disagreed, denied the motion for summary judgment and granted Waugh's Motion to Strike Portions of the Defense's Affidavits. Pursuant to Ind. Rules of Procedure, Appellate Rule 4(B)(6), the trial judge certified this cause for interlocutory appeal. We accepted jurisdiction, granted the doctor's Petition for Leave to File an Interlocutory Appeal and now consider the propriety of the trial court's decision.

Reversed.

Both the trial court and the appellate court apply the same standard of review for a motion for summary judgment: summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and testimony, if any, show that there was no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Pike County v. State ex rel. Hardin*, (1984) Ind.App., 469 N.E.2d 1188, Ind. Rules of Procedure, Trial Rule 56(C). The burden is on the moving party to show the absence of any genuine issue of material fact and all

doubts and inferences are resolved against the moving party. *Powell v. Dawson,* (1984) Ind.App. 469 N.E.2d 1179.

Our review of the appropriate documents of record shows the following facts:

On March 18, 1982, Waugh's wife, Linda, telephoned the offices of Doctors Robbins and Scruby and spoke to Dr. Robbins. Mrs. Waugh complained that her husband had been threatening to kill her and himself for the previous three (3) days and that he would not voluntarily seek help. Later that day, Dr. Robbins telephoned Mrs. Waugh and explained to her the proceedings for an emergency detention. Dr. Robbins told her that he would call the Zionsville Police Chief to find out the necessary steps to take for a commitment of this type. Dr. Robbins telephoned the police chief who advised him of the procedures for an emergency detention. Dr. Robbins then telephoned Mrs. Waugh and advised her that she had to personally initiate the commitment proceedings by contacting Judge Johnson of the Boone County Superior Court.

On March 19, 1982, Mrs. Waugh telephoned Dr. Scruby to explain that she had obtained emergency papers for her husband from Judge Johnson in Boone County and to ask if the doctor would sign them. Dr. Scruby requested more information and an opportunity to talk with her husband because Mr. Waugh was a patient of Dr. Scruby. Apparently, Mrs. Waugh was unaware of her husband's whereabouts because he left home after threatening her with a gun. She further explained that her husband had been drinking heavily and that she had repeatedly attempted to persuade her husband to come into the office because of his depression and threatening behavior.

Dr. Scruby's affidavit explains that on March 19, 1982, Mrs. Waugh brought the Application for Emergency Detention of Mentally Ill and Dangerous Person and the Physician's Emergency Statement for his signature. Dr. Scruby signed the papers because in his opinion, after hearing Mrs. Waugh's story, the doctor felt it was not unreasonable to sign the emergency detention papers so he could be evaluated and appropriately treated if necessary. The doctor's affidavit further stated that he had treated Waugh in his office on February 15, 1982, March 3, 1982, and March 26, 1982. The doctor's attached office records kept in the normal course of business confirm these office visits and attendant treatment. On March 19, 1982, Judge Johnson of the Boone Superior Court entered an order for Waugh's emergency mental illness detention and subsequently, Waugh was incarcerated in the Central State Hospital for approximately seventy-two (72) hours. The doctor's affidavit states that on March 26, 1982, following this detention, Waugh visited Dr. Scruby in his office and admitted that he had threatened his wife with a gun because he caught her in bed with another woman.

Dr. Scruby presents three issues for appellate review:

1. Whether the trial court lacked subject matter jurisdiction over the cause of action.

2. Whether Dr. Scruby's conduct can be a proximate cause of Waugh's alleged injury and damages.

3. Whether public policy and specific statutory law grants Dr. Scruby immunity from civil liability.

Our determination of the first issue is dispositive of this appeal; therefore, consideration of the remaining issues is unnecessary.

■ Because Waugh neglected to first present his claim to a medical review panel, as required by Indiana's Medical Malpractice Act. IND.CODE § 16–9.5–1–1 *et seq.,* Dr. Scruby maintains that the trial court lacked subject matter jurisdiction. We agree. IND.CODE § 16–9.5–9–2 provides:

No action against a health care provider may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel established pursuant to

this chapter and an opinion is rendered by the panel.

IND.CODE 16–9.5–1–1 provides in part:

Sec. 1.  As used in this article:

(a) "Health care provider" means (1) a person, partnership, corporation professional corporation, facility, or institution licensed or legally authorized by this state to provide health care or professional services as a physician, psychiatric hospital, hospital, dentist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist or psychologist, or as an officer, employee, or agent thereof acting in the course and scope of his employment.

(c) "Patient" means a natural person who receives or should have received health care from a licensed health care provider, under a contract, express or implied, and includes any and all persons having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider . . . .

The facts are undisputed that although Dr. Scruby is a health care provider within the meaning of the Act, he did not examine Waugh on March 19, 1982, before signing the commitment papers.  Waugh argues that this fact together with the fact that he neither made an express or implied contract for treatment with Dr. Scruby, establishes that he was not a patient within the meaning of the Act.  We do not agree. Rather, we determine that Waugh was a patient of Dr. Scruby's at the time of commitment;  that the Act is applicable;  and that the failure to first present this complaint to a medical review panel precludes summary judgment as a matter of law for Waugh.

A similar argument was made in a factual situation not too unlike the one at bar.

In *Detterline v. Bonaventura,* (1984) Ind.App., 465 N.E.2d 215, the appellant's wife, a patient of Dr. Bonaventura, pleaded with the doctor to sign the necessary papers to commit her husband, for reasons set forth in those papers, the doctor felt that Detterline could possibly harm himself

and others and thus, required commitment. Accordingly, Detterline was committed and subsequently, filed a cause of action against Dr. Bonaventura for a wrongful commitment to a mental hospital.  The trial court found, and the appellate court agreed, that Indiana's Medical Malpractice Act, I.C. § 16–9.5–1–1 *et seq.* controlled. Therefore, Detterline's failure to first present his complaint to a medical review panel pursuant to I.C. § 16–9.5–9–2 required dismissal for a lack of subject matter jurisdiction.  Detterline attempted to combat this by arguing that he was not a patient of Dr. Bonaventura's;  that he had not been examined by the doctor as a preliminary to his commitment;  and therefore, that the Act did not apply.  Detterline did concede, however, that almost a year previous to his commitment, he visited the doctor to have his blood pressure taken.  Relying upon *Gooley v. Moss,* (1979) Ind.App., 398 N.E.2d 1314, the Third District determined that Detterline was a "patient" within the meaning of the Act;  that although a contract is required for health care services, the person receiving the health care need not be a contractual party.  In particular, Judge Staton wrote:

Because Dr. Bonaventura signed Detterline's commitment papers in his role as a health care provider and because Mrs. Detterline made a contract with Dr. Bonaventura on Detterline's behalf, Detterline qualified as a "patient" of Dr. Bonaventura as the term is defined in 16–9.5–1–1(c).  This determination is consistent with the legislative intent underlying the other provisions of the Act to provide adequate health care services to the public and to protect physicians from frivolous suits.  The question of whether Dr. Bonaventura committed malpractice by signing the commitment papers should have been first submitted to a medical review panel.

*Detterline,* 465 N.E.2d at 219.

Accordingly, we hold that Dr. Scruby signed the commitment papers as a health care provider;  that Mrs. Waugh acted for and on behalf of her husband when she

solicited the services of Dr. Scruby and thereby entered into a contract with him for her husband; and that as a result of the concerted actions of the doctor and Mrs. Waugh, Waugh became a "patient" within the meaning of I.C. § 16–9.5–1–1(c). Waugh's attempt to discredit application of *Detterline* is unmoving; the fact that the Waughs were separated at the time of commitment does not alter the fact that Mrs. Waugh contracted with a health care provider on behalf of her husband, thereby making her husband a patient within the meaning of the Act. The questions of whether the doctor's conduct amounted to the proximate cause of Waugh's alleged injuries and whether the doctor is immune from any civil liability are questions which must first be presented to a medical review panel. I.C. § 16–9.5–9–2. Accordingly, as a matter of law, summary judgment could not be in favor of Waugh.

We reverse.

RATLIFF, P.J., and NEAL, J., concur.