Maurice WILLSEY a/k/a Jack Willsey
and Dorothy C. Willsey, Appellants,

v.

PEOPLES FEDERAL SAVINGS AND LOAN ASSOCIATION OF EAST CHICAGO, Indiana, a United States Corporation, Appellee.

No. 45A04–8707–CV–210.

Court of Appeals of Indiana,
Fourth District.

Oct. 20, 1988.

William J. Moran, Leonard M. Holajter, Highland, for appellants.

Steven A. Johnson, Paul B. Poracky, Spangler Jennings Spangler & Dougherty, P.C., Merillville, Thomas E. Rucinski, Sachs & Hess, P.C., Hammond, for appellee.

Theodore J. Nowacki, Bose McKinney & Evans, Indianapolis, for amicus curiae.

MILLER, Judge.

On October 6, 1982, Peoples Federal Savings and Loan Association of East Chicago, Indiana [Peoples] filed suit against Maurice Willsey and Dorothy Willsey and Joseph A. Bachleitner and Betty L. Bachleitner, seeking to foreclose a mortgage on a promissory note between Peoples and the Willseys. The Willseys filed a counterclaim for breach of contract, malicious prosecution and tortious interference with a contract. The Willseys also sought punitive damages. The trial court granted the Willseys' motion for summary judgment on Peoples' foreclosure action. An interlocutory appeal followed and this court affirmed the trial court in *Peoples Fed. Sav. & Loan Ass'n v. Willsey* (1984), Ind.App., 466 N.E. 2d 470, *trans. denied.* After approximately three and a half years of discovery and continuances, the trial court granted Peoples' Motion for Summary Judgment on the Willseys' counterclaim. The Willseys' appeal the grant of summary judgment claiming the trial court erred because genuine issues of material fact remained on each of the three paragraphs of their counterclaim.

We affirm.

## FACTS

The Willseys owned a home in Gary, Indiana. In 1976 they executed a note to

Peoples which was secured by a mortgage on the home. The mortgage contained a due on sale clause. In September, 1981, Willseys sold their home to the Bachleitners under a conditional sale contract.

Upon learning of the sale, Peoples requested its attorney, Frank J. Bochnowski, to research the law in the area of due on sale clauses as they related to conditional sale contracts.[1] Bochnowski concluded, in his professional judgment, the law was unsettled, but there was precedent from other jurisdictions to support the position the conditional sale contract between the Willseys and the Bachleitners triggered the due on sale clause.

Peoples had sold 95 percent of the mortgage to the Federal Home Loan Mortgage Corporation [Freddie Mac]. Bochnowski also concluded the due on sale clause could be enforced under federal regulations governing Freddie Mac transactions. After Peoples discovered the Willseys had sold the property, but before bringing the foreclosure action, Peoples repurchased the mortgage from Freddie Mac.

Peoples contacted the Willseys, informed them of its intention to accelerate the note and offered them the option of paying the balance or refinancing the note at a substantially higher rate of interest. Willseys asserted they were not in default and refused to either refinance or pay off the note. Peoples brought suit against Willseys to foreclose the mortgage and named the Bachleitners as additional defendants. The Willseys filed a counterclaim.

Cross motions for summary judgment were filed and the trial court granted partial summary judgment in favor of Willseys on Peoples' foreclosure action. This court affirmed the trial court's action on the basis the language of the contract showed the parties did not intend to prohibit a sale under a conditional sale contract. *Peoples Fed. Sav. & Loan Ass'n, supra.*

After the trial court granted Willseys' summary judgment motion, the Bachleitners contacted the Willseys and explained the couple who had been buying their former home had defaulted and they could not afford to make two house payments (for their former home and the home purchased from the Willseys).[2] The Willseys and Bachleitners agreed the Willseys would release the Bachleitners from the contract in exchange for a quit claim deed on the property and the payments already made under the contract.

The parties here then embarked on an extended discovery period involving numerous pre-trial motions, hearings and continuances. On April 11, 1986, Peoples filed a Motion for Summary Judgment which was denied. On November 10, 1986, Peoples filed a second Motion for Summary Judgment and/or Motion to Reconsider. After a hearing on this motion the trial court granted summary judgment in favor of Peoples.

Additional facts will be given below when pertinent to the decision.

## DECISION

■ The Willseys assert the trial court erred in concluding there were no genuine issues of material facts in dispute.[3] On

---

1. Peoples held a number of mortgages containing identical due on sale clauses with other individuals who had also sold their homes under conditional sale contracts.

2. The Bachleitners were unaware of the court's summary judgment in favor of Willseys.

3. The Willseys also assert the trial court violated their constitutional right to trial provided by Article I, Section 12 of the Indiana Constitution and the Fourteenth Amendment. They claim the trial court failed to properly supervise the litigation by holding matters under advisement in violation of Ind.Rules of Procedure, Trial Rule 53.2 and by allowing Peoples to interpose various delaying tactics. T.R. 53.2(E) provides:

"The procedure for withdrawing submission and processing the appointment of a special judge shall be as set forth in Trial Rule 53.1(E)." This procedure requires an interested party harmed by the delay to file a praecipe designating the motion or decision delayed. The Willseys did not follow this procedure, and have waived any error. *Misner v. Presdorf* (1981), Ind.App., 421 N.E.2d 684.

They also claim because Peoples filed numerous motions for continuance or extension of time the case was pending for an excessive length of time. As we discern the argument, they claim the mere passage of time entitles them to a trial. However, T.R. 56(B) allows a

April 6, 1987, the trial court entered the following Judgment:

"On November 10, 1986, Peoples Federal Savings and Loan Association of East Chicago, Indiana (Peoples) filed its second Motion for Summary Judgment and/or Motion to Reconsider incorporating its First Motion for Summary Judgment with supporting Affidavits and in Court testimony of two (2) witnesses. The Court now designates the following issues and/or claims upon which it finds no genuine issue as to any material facts:

1. On March 24, 1976 Maurice Willsey a/k/a Jack Willsey and Dorothy C. Willsey (Willseys) executed a Promissory Note and Mortgage whereby Peoples loaned Willseys Twenty Thousand Eight Hundred Dollars ($20,800.00) and in return Willseys gave Peoples a Mortgage on their real estate located at 3724 West 40th Avenue, Gary, Indiana.

2. Willseys sold said property by way of an unrecorded Contract for Conditional Sale of Real Estate to Joseph A. Bachleitner and Betty L. Bachleitner on September 14, 1981.

3. Although Willseys had failed to disclose to Peoples that they had sold their home on Land Contract and that they were no longer living in the home, Peoples learned of the Contract for Conditional Sale of the subject real estate and believed that said Contract triggered the due on sale clause contained in the mortgage.

4. Peoples had sold Ninety Five Percent (95%) of the Mortgage to Federal Home Loan Mortgage Corporation and warranted to the best of Peoples information and belief that the subject real estate was owner occupied.

5. Peoples was obligated to and did repurchase the Ninety–Five Percent (95%) of the Mortgage it had sold under the terms of its agreement with the Federal Home Loan Mortgage Corporation.

6. David A. Bochnowski, President and Chief Executive Officer of Peoples instructed the attorney for Peoples to conduct research of the law concerning the enforcement of due on sale clauses in Indiana by a Federal savings and loan association Mr. Bochnowski was informed by Peoples attorney that the applicable law in 1981 and 1982 was as follows:

a. That there were no restrictions on the enforcement of due on sale clauses in Indiana.

b. Federal regulations provided for the inclusion of due on sale clauses as a matter of contract between Peoples and its mortgagors.

c. That the general counsel of the Federal Home Loan Bank Board and Federal Home Loan Mortgage Corporation had rendered an opinion that equitable transfers such as Contract for Deed, Conditional Sale Contract and Installment Sale Contract would trigger a due on sale clause.

d. That there was no case law in Indiana interpreting the language of the due on sale clause contained in mortgages held by Peoples.

e. There was case law in Indiana which stated that there was no distinction between a Mortgage and a Land Contract and that there is an equitable transfer of ownership when a sale of real estate is made.

f. The Supreme Court of another jurisdiction had interpreted due on sale language as contained in the Willsey Mortgage and held that a Conditional Sales Contract was a breach of the due on sale clause.

g. Based on the foregoing, there would be probable cause to accelerate the maturity of the Note and Mortgage if a transfer of ownership had taken place.

7. The issue of whether or not a conditional Sales Land Contract triggered the enforcement of a due on sale clause was one of first impression in the State of Indiana at said time.

8. Peoples had probable cause to file its mortgage foreclosure upon learning of Willseys Contract for Conditional Sale of Real Estate with Bachleitner.

party against whom a counterclaim is asserted to move for summary judgment at *any time.*

9. Peoples foreclosure action ended in a granting of Summary Judgment for Willseys and against Peoples.

10. Willsey filed their Counter Claim against Peoples in Four (4) Counts.

11. Throughout the course of the Mortgage agreement, Peoples accepted the monthly payments as they became due and did not breach its agreement with Willseys.

12. By filing its foreclosure action, Peoples resorted to the Courts to litigate an issue of first impression in the State of Indiana.

13. The Note and Mortgage did not contain language prohibiting Peoples from filing a foreclosure action and, therefore, there was no breach.

14. Peoples did not act maliciously in the filing of the foreclosure action and acted in good faith after researching the law of due on sale clauses in existence at that time.

15. There is no malicious prosecution when a party litigates in good faith an issue of first impression.

16. Bachleitner and his friend/realtor, Donald Trump, went to Willseys to advise Willsey of Bachleitner's financial difficulties. During the meeting, Willsey failed to inform Bachleitner that the Court had ruled in his favor regarding the foreclosure action.

17. Bachleitner, as a result of the meeting, quit-claimed his interest in the subject property back to Willseys. Willseys retained the Six Thousand Dollars ($6,000.00) down payment and with additional monthly payments received approximately Thirteen Thousand Dollars ($13,000.00) worth of funds paid by Bachleitners towards the purchase of said property and in addition retained the real estate as well.

18. Bachleitners forfeited the property and payments to Willseys due to his financial difficulties caused by the default of a Contract purchaser purchasing another parcel of real estate from Bachleitner and not due to Bachleitner being named as a defendant in Peoples' foreclosure action.

19. Bachleitners' reasoning, after discussion with his realtor/friend, was that it would be in Bachleitners' best interest to return the property to Willsey and to move back into their original home so as to keep the mortgage payments current on the property they attempted to sell on Contract.

20. Peoples was required, in a foreclosure action, to name the Contract purchaser as a defendant therein.

21. Peoples did not interfere in the contractual rights between Willseys and Bachleitners.

22. Peoples acted in accordance with the Federal Regulations under which they were governed.

23. Peoples request for a nominal sum to determine, prepare and transmit to Willseys and/or a third party designee the payoff balance of the mortgage in question is not a breach of the mortgage agreement.

IT IS THEREFORE ORDERED AND ADJUDGED that the Second Motion for Summary Judgment and/or Motion to Reconsider filed by Peoples Federal Savings and Loan Association of East Chicago, Indiana is hereby granted as to each and every count of Maurice Willsey a/k/a Jack Willsey and Dorothy C. Willsey, Counter Claimant's, Counter Claim and Supplemental Counter Claim as there is no genuine issue as to any material fact and that Peoples Federal Savings and Loan Association of East Chicago, Indiana is entitled to Judgment as a matter of law.

JUDGMENT ACCORDINGLY."

■ In reviewing an entry of summary judgment, this court applies the same standards as the trial court. Summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and testimony, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C); *Crull v. Platt* (1984), Ind.App., 471 N.E.2d 1211. All evidence is construed in favor of the non-movant, and

any doubts as to the existence of a genuine factual issue are resolved against the proponent. *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723. The proponent has the burden of establishing there are no material facts at issue. *Scruby v. Waugh* (1985), Ind.App., 476 N.E.2d 533. However, the non-movant may not rest on the allegations or denial of his pleadings but must respond with affidavits, or other evidence, setting forth specific facts showing there is a genuine issue in dispute. *Johnson v. Padilla* (1982), Ind. App., 433 N.E.2d 393.

The Willseys contend there are genuine issues of material fact in dispute as to each of the allegations in their counterclaim.

### a. *Malicious Prosecution.*

■ The elements of a malicious prosecution action [4] are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; (4) the original action was terminated in the plaintiff's favor. *F.W. Woolworth Co., Inc. v. Anderson* (1984), Ind. App., 471 N.E.2d 1249. The Willseys contend there are genuine issues of material fact as to the second and third elements.

In support of the summary judgment motion, Peoples filed a number of affidavits. The affidavits of Frank J. Bochnowski, Peoples' attorney in the foreclosure action and David A. Bochnowski, Peoples' president, are relevant to this issue. In his affidavit, Frank Bochnowski described the research he conducted before advising Peoples of his conclusion the due on sale clause could be enforced in these circumstances. He stated, in reaching this conclusion, he relied in part on cases, an opinion of the General Counsel of the Federal Home Loan Bank Board, relevant sections of the Federal Register and portions of the Freddie Mac "Sellers and Servicers Guide", which were attached to the affidavit as exhibits. David Bochnowski stated he was the president of Peoples, that he became aware some mortgagors were making transfers of ownership in apparent breach of the due on sale clause, that he asked Frank Bochnowski to research the enforceability of the clause and pursuant to Frank Bochnowski's advice, Peoples contacted twenty-two mortgagors informing them of Peoples' right to accelerate the note and offering to refinance at a higher interest rate. As a result of Peoples' actions, some of the mortgagors paid the balance of their notes, some refinanced, and Peoples filed six foreclosure actions. All of the foreclosure actions, except the one against Willseys, were settled and dismissed.

■ Willseys first attack the Frank Bochnowski affidavit on the basis that it "contains nothing more than his interpretations and conclusions which are not material facts...." (Willseys' brief, p. 23) We disagree. The affidavit states Bochnowski researched the law and found authority for his conclusions, matters which were within his personal knowledge. In addition, "a qualified attorney's legal opinion as to an ultimate fact in issue is admissible, unless it addresses matters within the common knowledge and experience of ordinary persons." *McCullough v. Allen* (1983), Ind. App., 449 N.E.2d 1168, 1170. Therefore, the affidavit meets the requirements of Trial Rule 56(C).

Willseys also contend there were genuine issues of material fact concerning Peoples' probable cause to file the foreclosure action. As this court explained in *Wong v. Tabor* (1981), Ind.App., 422 N.E.2d 1279, 1285:

"In *Indianapolis Traction & Terminal Co. v. Henby* (1912), 178 Ind. 239, 248, 97 N.E. 313, 317, our Supreme Court stated:

'In the abstract, probable cause is a pure question of law, but its existence in a given case is a mixed question of law and fact, when one or more of the elementary facts thereof, relied upon, is controverted; in such case, the court must hypothetically state to the jury

---

**4.** As this court noted in *Wong v. Tabor* (1981), Ind.App., 422 N.E.2d 1279, this type of case is more properly referred to as a case for wrongful use of civil process, as malicious prosecution usually refers to wrongful prosecution of a criminal action.

the material facts which the evidence tends to prove, and positively direct, as to the law, on the assumed state of facts. Where the facts are uncontroverted, the court must determine the existence or nonexistence of probable cause.'

Resolving the question of the existence of probable cause thus requires isolation of the factual and legal elements of probable cause. If the facts relied upon are uncontroverted, the question of probable cause is for the court. *Miller v. Willis* (1920), 189 Ind. 664, 128 N.E. 831. Where the facts are in dispute, any conflict in the evidentiary underpinning must be resolved by the trier of fact. However, once that conflict is resolved, whether the facts as found constitute probable cause is again a question of law to be decided by the court. *Duckwall v. Davis* (1924), 194 Ind. 670, 142 N.E. 113."

In this case, the underlying facts are not in dispute. The due on sale clause, Willseys sale to the Bachleitners and Peoples' foreclosure action are a part of the record of this case. The Willseys do not contest the fact Frank Bochnowski researched the law or that Peoples relied on his advice, they simply disagree with his conclusions and assert the reasonableness of his conclusions is a question of fact. We disagree. The status of the law at the time the action was filed is a question of law.

Probable cause exists "when a reasonably intelligent and prudent person would be induced to act as did the person who is charged with the burden of having probable cause." *Satz v. Koplow* (1979), Ind. App., 397 N.E.2d 1082, 1084. Bochnowski relied in part on *Mutual Federal S. & L. Ass'n v. Wisconsin Wire Works* (1973), 58 Wis.2d 99, 205 N.W.2d 762, in which the Wisconsin Supreme Court held a due on sale clause containing somewhat similar language was enforceable. In addition, the Federal Home Loan Bank Board's regula-

tion permits the enforcement of due on sale clauses in transactions involving conditional sale contracts. 41 Fed.Reg. 76,296 (1976). Although this court found these authorities to be unpersuasive and decided the case on a different basis, we note that both Peoples' and the Willseys' arguments focused on the meaning of the word "convey." Apparently, both parties and this court each held different views of the meaning of the contract language. *Peoples Fed. Sav. & Loan Ass'n, supra.* Willseys have not cited nor has our research revealed any Indiana cases interpreting the language of this due on sale clause before this case.

Willseys, with the benefit of hindsight and this court's opinion, argue the meaning of the clause was clear from the time the action was initiated. However, they apparently failed to see such clarity until this court reached its decision.

■ The fact that a party is ultimately proven wrong in his interpretation of the law, does not lead to the conclusion the party had no probable cause to file suit. To hold otherwise, would have a chilling effect on all litigation. *See Wong, supra.* We conclude the law in this area was unsettled and Peoples had probable cause to bring the foreclosure action. The trial court did not err in granting summary judgment on this issue.[5]

b. *Tortious Interference with a Contractual Relationship.*

The elements of the tort of interference with a contractual relationship are:

"1. existence of a valid and enforceable contract;

2. defendant's knowledge of the existence of the contract;

3. defendant's intentional inducement of breach of contract;

4. the absence of justification; and

---

**5.** The Willseys also argue there are genuine issues of material fact regarding Peoples' obligation to buy back the mortgage from Freddie Mac. We decline to discuss this issue. A material fact is one which may be dispositive of the litigation or a relevant secondary issue. *Jones*

*v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138. Whether Peoples was required to buy back the mortgage to pursue the foreclosure action under Freddie Mac's rule is not dispositive of this litigation.

5. damages resulting from defendant's wrongful inducement of breach."

*Monarch Industrial Towel and Uniform Rental, Inc. v. Model Coverall Service, Inc.* (1978), 178 Ind.App. 235, 236, 381 N.E. 2d 1098, 1099.

The Willseys attempt to raise a factual issue by pointing to the fact Joseph Bachleitner executed two affidavits in which he gave conflicting reasons for returning the house to the Willseys. In an affidavit prepared by Peoples' attorney, Bachleitner described the transaction with the Willseys and stated:

"9. In May 1983, I spoke to Mr. Willsey and told him that my wife and I were concerned about the legal proceedings against us. Our concern was based partly upon the fact that my wife was in very poor health and I told that to Mr. Willsey. Mr. Willsey did not tell me that we had already won the case. Instead he told us that he would let us out of the contract if we signed a Quit–Claim Deed, and if he kept all of the money we had paid. Mr. Willsey said he was just trying to help us out of a bad situation. He kept over $13,000.00. A copy of the Quit–Claim deed is attached hereto and incorporated by reference as Exhibit "A".

10. At no time did I ever talk to any representative or agent of Peoples Federal Savings and Loan Association and they did nothing to cause me to sign the Quit–Claim Deed. If I had known that Judge Pinkerton had ruled in the Willseys favor I would not have allowed the Willseys to keep the money I paid them in excess of $13,000.00 and also sign the Quit–Claim Deed."

(Record at 145). Later, Bachleitner executed an affidavit prepared by Willseys' attorney, in which he declared a number of statements in the first affidavit were incorrect, and stated: "My wife and I left the property and signed the Quit Claim Deed because we were scared and frightened by the lawsuit filed by Peoples Federal." (R.

at 161A) [6] During the hearing on the summary judgment motion, the trial court heard testimony from Bachleitner to clarify his reason for signing the Quit Claim Deed. Bachleitner testified he signed the Quit Claim Deed because the couple who were buying his former home had defaulted and he could not afford two house payments. He also testified he would have signed the Quit Claim Deed even if there had been no action filed by Peoples.

Willseys argue a factual issue exists because the affidavits differ and the trial court in hearing Bachleitner's testimony, necessarily weighed the evidence. We agree a factual issue exists as to Bachleitner's reason for executing the Quit Claim Deed. Were this the sole basis for the summary judgment, reversal would be appropriate. However, this court will affirm a grant of summary judgment if the judgment is sustainable on any theory or basis in the record. *Gorski v. Deering* (1984), Ind.App., 465 N.E.2d 759.

Peoples contends it was justified in bringing the action against the Bachleitners. As purchasers under a conditional sale contract, the Bachleitners held equitable title to the real estate. *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E. 2d 641. All persons claiming an interest in the property which is the subject of the action are proper parties. *O'Brien v. Moffitt* (1893), 133 Ind. 660, 33 N.E. 616. The Bachleitners were properly joined pursuant to Trial Rule 19.

The only basis for Willseys claim of tortious interference with a contractual relationship was Peoples' action in joining the Bachleitners. Because Peoples was justified in so doing, the Willseys are unable to sustain an element of their claim. Therefore, the trial court properly granted summary judgment on this issue.

c. *Breach of Contract.*

The Willseys' allege there are issues of material fact as to whether Peoples breached the contract by insisting on the right to

**6.** The affidavits also differed in other particulars concerning the condition of the property and the transaction between the Willseys and

the Bachleitners. Because these matters are totally irrelevant to the issue before us, we will not discuss them.

accelerate the note and by filing the foreclosure action. The Willseys contend the trial court based its conclusion that Peoples did not breach the contract on its erroneous finding that Peoples had probable cause to bring the foreclosure action. Because we have determined Peoples had probable cause to bring the action, we need not further discuss this issue.

The Willseys contend:

"Peoples attempted to assert a contractual right (foreclosure) which it did not have according to the Trial Court's decision which was later affirmed on appeal. Peoples' actions were inconsistent with the express and implied provisions of the contract. The contract did not provide for the foreclosure remedy under the circumstances and a necessarily implied term in the contract was that Peoples would not attempt to foreclose in that situation. 11 *Williston Contracts* § 1295 (1968)."

*Williston* does not support the Willseys' proposition.

" 'Covenants are implied in two situations, one where the covenant is so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and the other where the covenant was probably beyond the pale of conscious thought of the parties but is necssary in order to give effect to and effectuate the purpose of the contract as a whole. Though a court balks at making a contract for the parties, it will, where justice and expediency demand, infuse the contract with a spirit of good faith and fair dealing in order to justify the implication of a covenant which will prevent one party from impairing the right of the other party to receive the fruits of the contract.' "

*Id.* at 42 quoting *Mortgage Corp. of New Jersey v. Manhattan Savings Bank,* 71 N.J.Super. 489, 177 A.2d 326. Here, there was no clear contemplation of the parties that Peoples would not seek to enforce the due on sale clause in these circumstances, nor is such a covenant necessary to give effect to the purpose of the contract as a whole.

■ The Willseys cite no other authority for the novel proposition it is a breach of contract to seek to enforce a clause, if the party seeking enforcement is later held to be incorrect in its interpretation of the clause.[7] Such action might afford the basis for a malicious prosecution action, but it is not a breach of contract.[8] The trial court did not err in granting summary judgment on this issue.

### d. *Breach of Fiduciary Duty.*

■ Finally, Willseys argue Peoples breached a fiduciary duty to them as members of the association. The Willseys correctly assert the trial court did not address this issue in its findings of fact and conclusions of law. However, this contention did appear as one of their contentions in a document designated a pre-trial order filed

**7.** Indiana courts have repeatedly affirmed a party's right to disagree as to the interpretation of a contract and have refused to permit the imposition of punitive damages when a party seeks to litigate an honest dispute, even when the party is found to be incorrect. *Vernon Fire & Cas. Ins. Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E. 2d 173; *Town & Country Mut. Ins. Co. v. Hunter* (1984), Ind.App., 472 N.E.2d 1265; *First Fed. S & L Ass'n of Indianapolis v. Mudgett* (1979), Ind. App., 397 N.E.2d 1002.

**8.** The Willseys also contend Peoples breached the contract by charging them a twenty-five dollar processing fee when the Willseys later sought to pay off the note after selling the property to a different purchaser. This fee was charged to compute the balance due. The agreement between the parties was silent as to such a charge, neither authorizing nor prohibiting it.

Willseys argue by charging the processing fee, Peoples violated IND.CODE § 32–8–1–1, which requires a mortgagee to release, discharge and satisfy of record the mortgage when the debt is discharged. At the time Peoples charged the fee, Willseys had not yet tendered the balance, nor is there any evidence Peoples failed to release the mortgage. The statute is not applicable.

We also observe the issue of the twenty-five dollar charge is subject to the maxim *de minimus non curat lex,* (the law does not concern itself with trifles.) A maxim applied in *Hunter v. Hunter* (1986), Ind.App., 498 N.E.2d 1278; *Stanford v. Stanford* (1976), 170 Ind.App. 203, 352 N.E.2d 93; *Geberin v. Geberin* (1977), 172 Ind.App. 255, 360 N.E.2d 41.

by Peoples' counsel on March 7, 1986. The trial court did not sign the order nor does it appear on the court's docket sheet. Although a trial court may amend the pleadings in a pre-trial order, Ind.Rules of Procedure, T.R. 16(J), in this case, the court made no pre-trial order. The pleadings were not amended to include this contention and the issue was not before the court at the time of summary judgment hearing. Willseys may not contend there were factual issues concerning a theory which they could, but did not, raise in their pleadings.

In addition, this issue is waived because the Willseys have failed to cite pertinent authority or present a cogent argument. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). In this portion of their brief, Willseys cite only two cases. These cases, *Schemmel v. Hill* (1930), 91 Ind.App. 373, 169 N.E. 678 and *Teeling v. Indiana Nat. Bank* (1982), Ind.App., 436 N.E.2d 855, are cited as authority for the proposition Peoples owed a fiduciary duty to the Willseys. Neither case is applicable. *Schemmel* involved the fiduciary duty owed by a director of a corporation to the corporation, when dealing with the corporation in an individual capacity. *Teeling* held that a fiduciary relationship may be created between a bank and a depositor by contract. Peoples is not a bank. *See* 13 Am. Jur.2d, Building and Loan Ass'ns § 3. It is a federal savings and loan association and is a creature of federal law. *Id.* § 11; 12 U.S.C. §§ 1461–1468, "Home Owners Loan Act of 1933." The Willseys have failed to cite any authority for the proposition Peoples owed the Willseys a fiduciary duty in these circumstances, nor are we able to discern from Willseys' argument any basis for such a duty. The duty must exist before it can be breached.

Finding no error, we affirm.

HOFFMAN and STATON, JJ., concur.